[No. 19802-9-II.   Division Two.   February 7, 1997.]
THE STATE OF WASHINGTON, *Respondent,* v. JAY DEREKE SHEA, *Appellant.*

*Jeffrey R. Lindblad,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Mark Von Wahlde, Deputy,* for respondent.

HOUGHTON, C.J. — Jay Dereke Shea appeals from his conviction of theft in the second degree on grounds the trial court erred in denying his motion to suppress an identification, or in the alternative to dismiss the charges, and in making an evidentiary ruling. We affirm.

## FACTS

At about 3 a.m. on April 17, 1995, Jay Dereke Shea and

an accomplice, Jonathan Jackson, broke into a truck and removed several pieces of stereo equipment. The victim of the crime, Michael McKay, watched the theft from his bedroom window 15 feet away and called the police on his cellular telephone.

McKay watched the suspects leave the scene and heard the sound of a loud car exhaust system. An officer arrived within minutes and was in the process of obtaining a description from McKay when a car drove by with a loud exhaust system. McKay identified the sound of the car and the officer pulled the car over. Two white males and several pieces of stereo equipment were found inside.

McKay was taken to where the suspects stood handcuffed on the side of the road and identified them. Jackson admitted to police that he and Shea had taken the items from McKay's truck and further told officers that additional items were in Shea's car. McKay identified two stolen compact disc containers while standing outside the car.

At a CrR 3.6 hearing, Shea moved to suppress the "showup" identification, and in the alternative, to dismiss the charges. The trial court found that the "showup" identification, although suggestive, was proper under all the circumstances, including the time of day and denied the motion.

Before trial, the court ruled that if Jackson's prior juvenile adjudications were admitted to diminish his credibility, Shea's similar prior juvenile adjudications could be admitted in the State's case in chief. Shea was convicted by jury of theft in the second degree[1] and now appeals.

## ANALYSIS

### 1. The "Showup" Identification

■ Shea first contends that the "showup" identification was unduly suggestive and violated his right to due pro-

---

[1]RCW 9A.56.040(1)(a); RCW 9A.56.020(1)(a).

cess. The burden is on Shea to prove that the "showup" identification was impermissibly suggestive. *State v. Gould*, 58 Wn. App. 175, 185, 791 P.2d 569 (1990) (citing *State v. Guzman-Cuellar*, 47 Wn. App. 326, 335, 734 P.2d 966, *review denied*, 108 Wn.2d 1027 (1987)).

Washington law on suggestive identification procedures evolved primarily from three U.S. Supreme Court cases: *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); and *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). The defendant must show (1) that the procedure was unnecessarily suggestive; and, if so, (2) whether considering the totality of the circumstances, the suggestiveness created a substantial likelihood of irreparable misidentification. In the second step, the trial court considers the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *State v. Maupin*, 63 Wn. App. 887, 897, 822 P.2d 355 (1992), *review denied*, 119 Wn.2d 1003 (1992); *Manson*, 432 U.S. at 115-16; *Gould*, 58 Wn. App. at 185 (citing *Guzman-Cuellar*, 47 Wn. App. at 335).

Application of the first step acts like summary judgment to bar meritless claims involving similar police procedures. But our review of case law discloses that trial courts are not uniform in their application of the test.[2] The trial courts are either addressing each step in turn,

[2]*See, e.g., State v. Burrell*, 28 Wn. App. 606, 610-11, 625 P.2d 726 (1981) (finding sufficient indicia of witness reliability under the step two factors to admit the identification after holding that where the initial description includes characteristics such as "frizzy Afro" style hair, a photo montage in which only one picture depicts that style of haircut is unnecessarily suggestive); *State v. Traweek*, 43 Wn. App. 99, 103, 715 P.2d 1148 (1986) (admitting a lineup identification under the step two factors after holding that where the suspect was described as a blond man, a lineup including only one blond man is unnecessarily suggestive), *review denied*, 106 Wn.2d 1007 (1986); *Maupin*, 63 Wn. App.

skipping the first step, or merging the two steps together. It is apparent that merging the two steps can lead to clearer analysis and still bar identifications that deny due process. Thus, by merging them, the test becomes whether, considering the totality of the circumstances and the above five factors, the given procedure leads to a substantial likelihood of irreparable misidentification.

■ Under this analysis, Shea fails to demonstrate that, under the totality of the circumstances, there was a substantial likelihood of misidentification denying him due process. The presence of a suspect in handcuffs surrounded by police is not enough by itself to demonstrate that the procedure was flawed. *Guzman-Cuellar*, 47 Wn. App. at 335; *United States v. Hines*, 455 F.2d 1317, 1328 (D.C. Cir. 1971) (presence of a number of police officers and suspect in handcuffs insufficient to establish procedure unduly suggestive), *cert. denied*, 406 U.S. 975 (1972).

Shea further fails to meet his burden under the five factors. First, McKay had ample opportunity to observe the suspects during the crime and devoted his full attention to watching them break into the truck. The record indicates that McKay saw the suspects break the rear window to enter the truck. In addition, he watched the suspects for about five minutes while they removed the stereo equipment from his truck. Although the area was not well lighted, there was at least a porch light to the side of the

at 896 (considering the step two factors after holding that a photo montage containing only one picture is unnecessarily suggestive); *State v. Springfield*, 28 Wn. App. 446, 447-48, 624 P.2d 208 (1981) (applying only the step two factors to admit a "showup" identification), *review denied*, 95 Wn.2d 1020 (1981); *State v. Hebert*, 33 Wn. App. 512, 514, 656 P.2d 1106 (1982) (applying only the step two factors because, "[r]eliability of identification testimony is the critical factor in determining its admissibility"); *State v. Woods*, 34 Wn. App. 750, 761, 665 P.2d 895 (1983) (applying only the step two factors to admit a lineup identification), *review denied*, 100 Wn.2d 1010 (1983); *State v. Bockman*, 37 Wn. App. 474, 481-82, 682 P.2d 925 (1984) (merging the two steps together in determining that "[e]vidence of an identification should be excluded only if the identification procedure was so impermissibly suggestive as to create a very substantial likelihood of irreparable misidentification"), *review denied*, 102 Wn.2d 1002 (1984); *State v. Alferez*, 37 Wn. App. 508, 512, 681 P.2d 859 (1984) (merging the two steps together in determining that "[t]he reviewing court must balance the witness' reliability against the harm of the suggestiveness by evaluating the totality of the circumstances"), *review denied*, 102 Wn.2d 1003 (1984).

residence, and the truck's dome light was on. Moreover, the truck was parked only 15 feet from McKay's window.

There is some dispute as to the description initially given by McKay to the police. The officer who initially spoke with McKay at his residence stated that the description was as follows:

> They were two younger white males. He said late teens, early 20s. He said one or two — one of the two were [sic] wearing a hat, one was shorter, approximately 5'6", another he advised was approximately 5'8" or so, maybe 5'9".

All of this information did not, however, get passed to the officer who conducted the "showup," or included in the police report. In addition, one of the suspects lived within close proximity to McKay and was known by sight, but was not identified by name in the description.

As to the last two factors, McKay immediately identified the suspects. In addition, he told the police at the time that he was "absolutely positive" that the two were the ones who broke into his truck. Finally, the "showup" occurred within 15 minutes of his original call to the police. The trial court properly denied Shea's motion in the alternative.

2. Admission of Prior Juvenile Criminal History

Shea also contends that the trial court erred in ruling that if the prior juvenile convictions of the State's witness were admitted into evidence, Shea's similar convictions would be admitted. Under ER 609(d), the trial court's ruling is erroneous because an accused's juvenile adjudications are not admissible in a criminal case. *See* ROBERT H. ARONSON, THE LAW OF EVIDENCE IN WASHINGTON 609-7 (2d ed. 1993).

■ Assuming error, it is harmless. First, the defense did not attempt to bring in Jackson's juvenile record during cross examination. Second, Shea testified and the State did not raise his juvenile record during cross examination. Finally, our review of the record discloses that the evidence against Shea was overwhelming. Thus, the trial court is affirmed.

62

BRIDGEWATER, J., and DRAPER, J. Pro Tem., concur.