213 P.3d 63 (2009)
STATE of Washington, Respondent,
v.
Keith Dwain BIRCH, Appellant.
No. 26635-4-III.
Court of Appeals of Washington, Division 3.
August 11, 2009.
*65 David N. Gasch, Gasch Law Office, Spokane, WA, for Appellant.
Mark E. Lindsey, Prosecuting Attorney's Office, Spokane, WA, for Respondent.
BROWN, J.
¶ 1 Keith Dwain Birch appeals his first degree robbery conviction and persistent offender sentencing. He contends his counsel failed to object to a California robbery conviction partly used to determine his persistent offender status and that the trial court erred in failing to conduct a comparability analysis for that conviction. Mr. Birch also contends the court erred in denying his juror cause-challenge and denying his motion to exclude identification testimony. We reject his contentions, and affirm.

FACTS
¶ 2 In 2005, the State charged Mr. Birch with one count of first degree robbery. A November 2007 jury trial produced the following facts.
*66 ¶ 3 On January 7, 2003 in the early afternoon, Leona Morales, a teller at Wells Fargo Bank on Northwest Boulevard in Spokane, saw a customer approaching the counter and asked if she could help him. The customer was a male, wearing a black hat, jeans, a red and black sweater, and glasses. Ms. Morales thought the customer was wearing a disguise of glasses connected to a fake nose and mustache. Ms. Morales thought he had a gun because the customer had one hand in his pocket.
¶ 4 Ms. Morales testified the customer threw a black bag down on the counter, along with a note stating "[t]his is a robbery." 2 Report of Proceedings (RP) (Nov. 6, 2007) at 286. Ms. Morales filled the bag with cash, and the customer took the bag and the note and left the building. After he left, Ms. Morales activated her alarm system.
¶ 5 Responding law officers were unable to find the suspect, but did locate several items in an a nearby alley including sport goggles, glasses, a black knit hat, a knit glove, a red sweatshirt, and a torn paper with writing on it. DNA found on the glasses, the hat, the glove, and the sweatshirt matched Mr. Birch's DNA sample.
¶ 6 At the end of the first day of jury selection, the prospective jurors had been exhausted. The trial court told counsel it would keep the jurors selected on the first day and bring in new prospective jurors the next day in order to fill out the panel. The court told counsel that Mr. Birch had two peremptory challenges remaining that could be used on the second day of jury selection. Mr. Birch objected to this process, arguing it affected his ability to evaluate the entire venire, and strategically use all six of his peremptory challenges. Accordingly, Mr. Birch requested the trial court start the jury selection process anew. The trial court rejected this request.
¶ 7 The next day, 14 new prospective jurors joined the panel. When detailing her background, Juror No. 32 stated she worked at Washington Mutual Savings Bank for 10 years, working for brokers "in the investment end," but never as a teller. 2 RP (Nov. 6, 2007) at 194. She described her other employment at a small wheat ranch and as a medical receptionist. Juror No. 32 answered that she thought she could follow Mr. Birch's constitutional rights and his presumption of innocence despite the bank robbery allegations, and a number of follow-up questions showed she understood the need to wait for the evidence and not decide the case based on what was said in voir dire.
¶ 8 Mr. Birch moved to strike Juror No. 32 for cause stating, "I think she indicated that she worked in a bank. It sounds like there was some training and she has the strong potential of having been influenced by that." 2 RP (Nov. 6, 2007) at 251. The court denied the challenge, stating:
Well, if she was a teller, I might agree. But it sounds like she is kind of separated from that whole thing. I mean, they probably all get some sort of general training, but I doubt that the kind of training that they get is really going to be the sort of thing that is really going to affect her objectivity here.
2 RP (Nov. 6, 2007) at 251-52. Mr. Birch then exercised one peremptory challenge, and waived his final peremptory challenge. Juror No. 32 was seated on the jury.
¶ 9 Mr. Birch moved to exclude Ms. Morales's in-court identification of him because she had seen him wearing handcuffs in the hallway outside the courtroom with his escort officers. Ms. Morales then told both counsel she would, in court, identify Mr. Birch as the robbery perpetrator. Defense counsel argued Ms. Morales's identification would be tainted by her hallway observations. The trial court denied the exclusion motion, ruling the identification "really goes to the weight of how reliable her recollection and identification is." 2 RP (Nov. 6, 2007) at 263. In court, after questioning about the hallway encounter, Ms. Morales identified Mr. Birch as the perpetrator:
[The State:] What is it about [Mr. Birch] that makes you think that he was the suspect?
[Ms. Morales:] It was his eyes.
. . . .
[The State:] How sure are you that [Mr. Birch] is the person that robbed the bank on that day?

*67 [Ms. Morales:] I am sure.
2 RP (Nov. 6, 2007) at 292-93.
¶ 10 Ms. Morales testified she was approximately three feet away from Mr. Birch during the incident, and although she primarily focused on his chest, she looked at his face for "a good few seconds." 2 RP (Nov. 6, 2007) at 321. In cross-examination, Ms. Morales reviewed her law enforcement report describing some differences in the suspect's age, height, and weight, eye color, hair color, and facial hair. Cross-examination revealed the courtroom encounter was the first time she had seen Mr. Birch since the robbery and that she had never been asked to view a line-up, a photomontage, or identify a suspect. Detective Donald Giese testified about Mr. Birch's listed appearance in March 2003 records.
¶ 11 The jury found Mr. Birch guilty as charged. At sentencing, Mr. Birch, his defense counsel and the prosecutor signed and filed out an "Understanding of Defendant's Criminal History." Clerk's Papers (CP) at 105-06. The first page listed Mr. Birch's criminal history, including a Washington second degree assault conviction and a California robbery conviction. The second page partly stated:
[Mr. Birch's] understanding of [his] criminal history is as set out above. [Mr. Birch] agrees that, unless otherwise noted in writing here, each of the listed convictions counts in the computation of the offender score and that any out-of-state or foreign conviction is the equivalent of a Washington felony offense.
CP at 106.
¶ 12 The State asked for life in prison without the possibility of parole, under Washington's Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, chapter 9.94A RCW, or the "three strikes law." The State identified Mr. Birch's two earlier strikes as the Washington second degree assault conviction and the California robbery conviction. The State informed the court it had provided original documents reflecting the California robbery conviction, and requested these documents be filed, but they are not part of our record.
¶ 13 Defense counsel stated, "[w]e are here, obviously, because Mr. Birch is going to receive a life sentence." RP (Nov. 15, 2007) at 5. And, regarding criminal history:
I have looked at the documents provided by [the State] to support Mr. Birch's criminal history. The conviction out of California for the robbery ... there are only really three documents. And I didn't see any signature by a judge on these documents.... I suggested the possibility that Mr. Birch may not want to agree to that conviction.... And I talked with Mr. Birch about that possibility today. And his response is, [t]hat was a conviction that I received, and I am not going to say I didn't because it is what happened.
RP (Nov. 15, 2007) at 5-6.
¶ 14 Without any comparability discussion, the court stated, "[t]here really isn't any dispute here about the criminal history," and sentenced Mr. Birch to life in prison without the possibility of parole. RP (Nov. 15, 2007) at 7. Mr. Birch appealed.

ANALYSIS

A. Challenge for Cause
¶ 15 The issue is whether the trial court erred in refusing to dismiss Juror No. 32 for cause. Mr. Birch contends actual bias exists because Juror No. 32 worked in a bank.
¶ 16 "Under the Sixth Amendment and article 1, section 22 of the state constitution, a defendant is guaranteed the right to a fair and impartial jury." State v. Rupe, 108 Wash.2d 734, 748, 743 P.2d 210 (1987). A juror may be challenged by a party for cause. CrR 6.4(c); RCW 4.44.170. We review a trial court's denial of a challenge for cause for a manifest abuse of discretion. State v. Noltie, 116 Wash.2d 831, 838, 809 P.2d 190 (1991). "[T]he trial court is in the best position to determine a juror's ability to be fair and impartial." Id. at 839, 809 P.2d 190. Specifically, "[t]he trial judge is able to observe the juror's demeanor and, in light of that observation, to interpret and evaluate the juror's answers to determine whether the juror would be fair and impartial." Rupe, *68 108 Wash.2d at 749, 743 P.2d 210. Reversal is the remedy for an erroneous for cause-challenge denial. See, e.g., State v. Stackhouse, 90 Wash.App. 344, 352, 361, 957 P.2d 218 (1998) (case remanded for cause-challenge errors).
¶ 17 Actual bias supports a challenge for cause. RCW 4.44.170(2). "Actual bias" is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). "[W]here actual bias is claimed, it must be established by proof." Noltie, 116 Wash.2d at 838, 809 P.2d 190. "[E]quivocal answers alone do not require a juror to be removed when challenged for cause, rather, the question is whether a juror with preconceived ideas can set them aside." Id. at 839, 809 P.2d 190. More than a possibility of prejudice must be shown. Id. at 840, 809 P.2d 190.
¶ 18 Here, Juror No. 32 worked in investments at a bank for 10 years and was trained in robbery procedures. The State asked Juror No. 32 whether, given this background, she would be able to uphold Mr. Birch's constitutional rights and follow the court's instructions. She responded, "[y]es, I think I could." 2 RP (Nov. 6, 2007) at 209. Although equivocal, this response indicates Juror No. 32 could set her preconceived ideas aside. Further, Juror No. 32 indicated she had not received any evidence in the case yet, and that she would not decide the case until she heard the evidence. Nothing is shown beyond the mere possibility of prejudice on the part of Juror No. 32. Having so ruled, we do not address Mr. Birch's additional concerns over the two-day jury selection process, because he had a peremptory challenge remaining that he could have used to strike Juror No. 32.

B. Courtroom Identification
¶ 19 The issue is whether the trial court erred in denying Mr. Birch's motion to exclude his in-court identification. Mr. Birch contends the identification was tainted by Ms. Morales seeing him in the hallway before the in-court identification. We disagree.
¶ 20 Show-up identification is typical shortly after a crime occurs when police show a suspect to a witness or victim. See, e.g., State v. Guzman-Cuellar, 47 Wash.App. 326, 328-29, 734 P.2d 966 (1987) (show-up identification within hours of the crime). Contrary to the State's argument, a showup identification analysis has been applied to a courtroom identification similar to that found here. See State v. Smith, 36 Wash.App. 133, 136-40, 672 P.2d 759 (1983). In Smith, the witness identified the defendant, and later made an in-court identification of the defendant. Id. at 136, 672 P.2d 759.
¶ 21 Our issue involves the admission of evidence; our review is for an abuse of discretion. See State v. Kinard, 109 Wash. App. 428, 432, 36 P.3d 573 (2001). "A trial court abuses its discretion when it exercises its discretion in a manifestly unreasonable manner or bases its decision on untenable grounds or reasons." State v. Jordan, 146 Wash.App. 395, 401, 190 P.3d 516 (2008) (citing State v. Berty, 136 Wash.App. 74, 83-84, 147 P.3d 1004 (2006)).
¶ 22 To meet due process requirements, an out-of-court identification must not be "so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification." State v. Vickers, 148 Wash.2d 91, 118, 59 P.3d 58 (2002). To make this determination, we employ a two-part test. Id.; see also Kinard, 109 Wash.App. at 433, 36 P.3d 573. First, the defendant must show the identification procedure was impermissibly suggestive. Id. Show-up identifications are not per se impermissibly suggestive. Guzman-Cuellar, 47 Wash.App. at 335, 734 P.2d 966. If the defendant fails to make this showing, the inquiry ends. Vickers, 148 Wash.2d at 118, 59 P.3d 58.
¶ 23 If the defendant proves the procedure was impermissibly suggestive, under the second step of the analysis, "the court then considers, based upon the totality of the circumstances, whether the procedure created a substantial likelihood of irreparable misidentification." Id. To make this determination, courts consider: "(1) the opportunity of the *69 witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation." State v. Linares, 98 Wash. App. 397, 401, 989 P.2d 591 (1999) (citing State v. Shea, 85 Wash.App. 56, 59, 930 P.2d 1232 (1997), overruled on other grounds by State v. Vickers, 107 Wash.App. 960, 967 n. 10, 29 P.3d 752 (2001)).
¶ 24 Considering the first prong, Mr. Birch argues Ms. Morales saw him escorted by law officers and wearing handcuffs. But that alone does not demonstrate unnecessary suggestiveness. Guzman-Cuellar, 47 Wash. App. at 336, 734 P.2d 966; see also Shea, 85 Wash.App. at 60, 930 P.2d 1232. Without other facts showing impermissible suggestiveness, Mr. Birch fails to meet his burden under the first prong of the analysis. See Vickers, 148 Wash.2d at 118, 59 P.3d 58. In passing, we note Mr. Birch incorrectly cites to Shea, which has been overruled, for the premise that the two prongs of the test should be merged. See Shea, 85 Wash.App. at 60, 930 P.2d 1232, overruled by Vickers, 107 Wash.App. at 967 n. 10, 29 P.3d 752.
¶ 25 Moreover, we are satisfied no due process violation occurred. Ms. Morales was approximately three feet away from Mr. Birch during the incident. She looked at his face for "a good few seconds." 2 RP (Nov. 6, 2007) at 321. She gave a description similar to Mr. Birch's age and appearance and testified she was sure Mr. Birch was the perpetrator. Although Mr. Birch suggested other facts bearing on his identification, the fact question was properly left to the jury without a substantial likelihood for misidentification. See State v. Kinard, 39 Wash.App. 871, 874, 696 P.2d 603 (1985) (reliability question goes to weight not admissibility).

C. Comparability of California Conviction
¶ 26 The issue, raised for the first time on appeal, is whether the trial court erred in counting Mr. Birch's California robbery conviction as a persistent offender strike.
¶ 27 "[A] challenge to the classification of out-of-state convictions, like other sentencing errors resulting in unlawful sentences, may be raised for the first time on appeal." State v. Ford, 137 Wash.2d 472, 484-85, 973 P.2d 452 (1999). We review the offender score calculation and a sentence under the POAA de novo. State v. O'Connell, 137 Wash.App. 81, 87, 152 P.3d 349, review denied, 162 Wash.2d 1007, 175 P.3d 1094 (2007).
¶ 28 A persistent offender is a person who has been convicted in Washington of a felony classified as a "most serious offense," and, prior to committing this offense, had been convicted of at least two felonies in Washington or elsewhere, classified as most serious offenses and that would be included in the offender score pursuant to RCW 9.94A.525. Former RCW 9.94A.030(33) (2006). A "most serious offense" is defined as any class A felony, and other enumerated felonies. Former RCW 9.94A.030(29). A persistent offender must be sentenced to life in prison without the possibility of parole. RCW 9.94A.505(2)(a)(v); RCW 9.94A.570.
¶ 29 An offender score is derived from the defendant's criminal history using prior convictions and seriousness level of the current offense. State v. Ross, 152 Wash.2d 220, 229, 95 P.3d 1225 (2004). The out-of-state convictions are classified according to the comparable Washington offense. Id. (citing RCW 9.94A.525(3)). Federal convictions are similarly classified. Id. at 229 n. 2, 95 P.3d 1225. Generally, "the State bears the burden to prove by a preponderance of the evidence the existence and comparability of a defendant's prior out-of-state conviction." Id. at 230, 95 P.3d 1225 (citing State v. McCorkle, 137 Wash.2d 490, 495, 973 P.2d 461 (1999)). "Under the POAA, an out of state conviction may not be used as a strike unless the State proves by a preponderance of the evidence that the conviction would be a strike offense under the POAA." In re Pers. Restraint of Lavery, 154 Wash.2d 249, 252, 111 P.3d 837 (2005) (citing Ford, 137 Wash.2d at 479-80, 973 P.2d 452).
¶ 30 In Ross, our Supreme Court considered three consolidated cases and whether the sentencing courts miscalculated two of *70 the defendants' offender scores. Id. at 229-32, 95 P.3d 1225. Both defendants argued the sentencing courts failed to require the State to prove comparability of foreign convictions to Washington offenses. Id. at 226-27, 95 P.3d 1225. The first defendant objected to including an out-of-state conviction in his offender score on comparability grounds. Id. at 226, 95 P.3d 1225. His counsel later conceded the conviction was properly included in his offender score. Id. The sentencing court included the conviction in the defendant's offender score calculation. Id. Counsel for the second defendant submitted a sentencing memorandum which included two prior federal drug convictions as part of the defendant's criminal history. Id. at 227, 95 P.3d 1225. The defendant made a same criminal conduct argument, but he did not address the issue of comparability. Id. The sentencing court included both convictions in the defendant's offender score calculation. Id. Our Supreme Court, relying on Ford, rejected the defendants' arguments regarding comparability, concluding each defendant "affirmatively acknowledged at sentencing that their prior out-of-state and/or federal convictions were comparable to Washington state crimes and thus were properly included in their offender score." Id. at 230, 95 P.3d 1225; see also Ford, 137 Wash.2d at 483 n. 5, 973 P.2d 452.
¶ 31 In Ford, regarding what constitutes an affirmative agreement, the court stated:
For example, in this case the defense attorney included two other California convictions in its offender score calculation to the court. These, and any other out-of-state convictions included in the defense's proffered offender score calculation, are properly included without further proof of classification.
Ford, 137 Wash.2d at 483 n. 5, 973 P.2d 452.
¶ 32 Although Ross and Ford did not involve the POAA, we extend the rule regarding affirmative agreements regarding the inclusion of prior offenses in the offender score to cases involving the POAA. See Ross, 152 Wash.2d at 230, 95 P.3d 1225; Ford, 137 Wash.2d at 483 n. 5, 973 P.2d 452. Mr. Birch acknowledged he was subject to a sentence under the POAA: "[w]e are here, obviously, because Mr. Birch is going to receive a life sentence." RP (Nov. 15, 2007) at 5. In addition, Mr. Birch affirmatively agreed the California robbery conviction was properly included in his offender score. The agreement is first shown by the "Understanding of Defendant's Criminal History," signed by both Mr. Birch and his counsel, and filed on the day of sentencing. CP at 105-06. Second, the agreement is shown by defense counsel's statements at sentencing:
I suggested the possibility that Mr. Birch may not want to agree to that conviction.... And I talked with Mr. Birch about that possibility today. And his response is, [t]hat was a conviction that I received, and I am not going to say I didn't because it is what happened.
RP (Nov. 15, 2007) at 6.
¶ 33 By asserting the California robbery conviction was properly included in his offender score, the conviction was "properly included without further proof of classification." Ford, 137 Wash.2d at 483 n. 5, 973 P.2d 452. The trial court did not err in counting Mr. Birch's California robbery conviction as a strike under the POAA.

D. Assistance of Counsel
¶ 34 The issue is whether Mr. Birch was denied effective assistance of counsel. Mr. Birch contends his counsel was ineffective because he failed to object to the California robbery conviction as criminal history without a comparability analysis.
¶ 35 Constitutional ineffective-assistance-of-counsel claims raise a mixed question of law and fact reviewed de novo. Strickland v. Washington, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance claimants must satisfy a two-prong test showing: (1) the performance of counsel was so deficient that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant. Id. at 687, 104 S.Ct. 2052.
¶ 36 Prejudice is established if "the result of the proceeding would have been different but for counsel's deficient representation." State v. McFarland, 127 Wash.2d 322, 337, 899 P.2d 1251 (1995) (citing *71 Thomas, 109 Wash.2d at 224-25, 743 P.2d 816). "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below." Id. at 335, 899 P.2d 1251. We engage in a strong presumption that counsel's representation was effective. Id. This presumption will be rebutted by a clear showing of incompetence. State v. Varga, 151 Wash.2d 179, 199, 86 P.3d 139 (2004).
¶ 37 We apply a two-part test for comparability to determine whether foreign convictions are comparable to Washington strike offenses. Lavery, 154 Wash.2d at 255, 111 P.3d 837 (citing State v. Morley, 134 Wash.2d 588, 605-06, 952 P.2d 167 (1998)). First, the court must compare the elements of the crimes. Id. (citing Morley, 134 Wash.2d at 605-06, 952 P.2d 167). Second, "[i]n cases in which the elements of the Washington crime and the foreign crime are not substantially similar, ... the sentencing court may look at the defendant's conduct, as evidenced by the indictment or information, to determine if the conduct itself would have violated a comparable Washington statute." Id. (citing Morley, 134 Wash.2d at 606, 952 P.2d 167). Thus, in order to count as a strike, the foreign conviction must be either legally or factually comparable to a Washington strike offense. Id. at 255-58, 261-62, 111 P.3d 837.
¶ 38 Mr. Birch relies on State v. Thiefault, 160 Wash.2d 409, 158 P.3d 580 (2007). In Thiefault, defense counsel did not object to the sentencing court's determination that the defendant's Montana attempted robbery conviction was legally comparable to its Washington counterpart. Id. at 413-14, 158 P.3d 580. On appeal, our Supreme Court held the defendant received ineffective assistance of counsel. Id. at 414-17, 158 P.3d 580.
¶ 39 Regarding the first Strickland prong, the Thiefault court found the defense counsel's performance deficient because the Montana attempted robbery statute was not legally comparable to its Washington counterpart, and the documents submitted by the State at sentencing were insufficient to show factual comparability between the statutes. Id. at 415-17, 158 P.3d 580. Regarding the second Strickland prong, the court found the deficient performance was prejudicial because the State might not have been able to produce additional documents supporting comparability.
¶ 40 Here, unlike Thiefault, the trial court did not undertake a comparability analysis because Mr. Birch affirmatively acknowledged the California robbery conviction was properly included in his offender score. And, Mr. Birch fails to point to anything in the record indicating his California robbery conviction was not factually comparable. Thus, Mr. Birch additionally does not suggest any prejudice. The California statute under which Mr. Birch was convicted is not part of our record. Considering all, Mr. Birch fails to overcome the strong presumption that defense counsel's representation was effective. Accordingly, Mr. Birch does not establish ineffective assistance of counsel.
¶ 41 Affirmed.
WE CONCUR: SCHULTHEIS, C.J. and SWEENEY, J.