

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34350-2-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 34351-1-III) |
| v. | ) | |
| | ) | |
| DESHAWN DARNELLE GRAY, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE LUIS MIRANDA CANDIDO | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — In these consolidated appeals, juveniles Deshawn Darnelle Gray and Jose Luis Miranda Candido challenge their convictions for second degree robbery. Both argue that the trial court erred when it (1) ruled on a suppression motion before giving the defense a chance to present evidence, (2) ruled inconsistently on admissibility of in-court identification evidence, and (3) denied a motion to suppress the victim's out of court identification. We find no error and affirm.

No. 34350-2-III (consolidated with No. 34351-1-III)
*State v. Gray*


FACTS AND PROCEDURAL BACKGROUND

On an evening in February 2016, following a Super Bowl party at Magdalena Rodriguez's brother's home, her boyfriend, Cody Zeller, tried to walk her home. En route, and around the time a group of people started crossing a street to the sidewalk where she and Mr. Zeller were walking, Ms. Rodriguez fast-walked ahead to "split off" from him. Report of Proceedings (RP)[1] at 25. She later explained she was upset because she didn't want him to walk her home. As she distanced herself from Mr. Zeller and the approaching group, she heard someone ask Mr. Zeller for a cigarette.

What Mr. Zeller later estimated was a group of four to six people—two men; the rest women—approached him and asked for a cigarette, then asked if he had marijuana, and then asked him for a dollar, to which he repeatedly responded no. He reconsidered the request for a dollar, however ("ha[ving] a feeling they knew that I had a wallet on me"), and was about to hand one over when one of the men pulled out a handgun. RP at 69. Mr. Zeller was forced to give the man wielding the gun all the money in his wallet— between $23 and $26, he testified at trial. At that point, everyone in the group except the man who was unarmed ran off. The unarmed man tried unsuccessfully to take Mr. Zeller's wallet, and then ran off after the others.

---

[1] References to the Report of Proceedings are to the volume of proceedings that includes trial proceedings on April 1, 4, and 8, 2016.

When Mr. Zeller caught up with Ms. Rodriguez, she was on the phone with a 911 operator, having become concerned that something had happened to him. Mr. Zeller described the people who robbed him as wearing all black and told Ms. Rodriguez he believed the group was heading toward a nearby Hy's Mini Mart convenience store, information Ms. Rodriguez passed along to the 911 operator. She and Mr. Zeller then hurried to the convenience store themselves. They did not find the people that robbed Mr. Zeller, but remained at the convenience store to await the arrival of police officers at the 911 operator's request.

Officer Casey Gillette was on duty when dispatch reported a robbery at gunpoint in an area of Yakima that he patrolled. The report was that the suspects were male and female, wearing all black. Driving through the area where the suspects were last seen, the officer saw three people wearing all black walking down an alley. When he turned into the alley and drove toward them, one of them sprinted off. The officer radioed other officers that one suspect fled and was running east. He detained the other two individuals, who turned out to be Deshawn Gray and J.L.[2]

Officer Elias Huizar also responded to the report of the robbery and joined Officer Gillette to assist with Mr. Gray and J.L. After both were handcuffed and placed in patrol

---

[2] We use initials for the juvenile female detained that evening. *See* Gen. Order of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov/appellate_trial_courts/.

cars, Officer Huizar was standing by while other officers checked the area when he twice saw a young man walking nearby who met Officer Gillette's description of the man who fled. When told to stop by Officer Huizar, the young man originally ran but later returned. On returning, he complied as Officer Huizar detained him, although he mocked police efforts to find him, calling the police "weak" and telling the officer he was caught only because he "let [them]." RP at 201. The third man detained was determined to be Jose Miranda Candido.

Meanwhile, Officer Thomas Garza had arrived at the Hy's convenience store and questioned Mr. Zeller and Ms. Rodriguez. Upon receiving word that three suspects had been detained, he took Mr. Zeller and Ms. Rodriguez to where they were being held and conducted a showup. During the showup, Mr. Zeller and Ms. Rodriguez were in a patrol car across the street from three patrol cars in each of which a suspect was seated. Officers brought Mr. Gray out of a patrol car first, then J.L., and then Mr. Miranda Candido. All three suspects were in handcuffs when presented to Mr. Zeller for identification, and an officer illuminated each suspect with a spotlight. Officer Garza's in-car video and sound recording equipment, manufactured by COBAN Technologies[3] was operating, recording Mr. Zeller and Ms. Rodriguez during the procedure.

---

[3] References to COBAN were not explained in the record below, but the company's recording and related computer equipment is described in *Fisher Broad.-Seattle TV LLC v. City of Seattle*, 180 Wn.2d 515, 518, 326 P.3d 688 (2014).

After Mr. Zeller identified the three—hesitantly, in the case of Mr. Gray; less so, in the case of the two others—Mr. Gray and Mr. Miranda Candido were transported to the juvenile detention center together, in the back seat of a patrol car under the same video and audio surveillance. During the transport, both—but principally Mr. Miranda Candido—made incriminating statements. When the two were searched on arrival at the detention facility, a $20 bill was found in Mr. Gray's shorts and three $1 bills were found in Mr. Miranda Candido's possession. Both were charged in juvenile court with second degree robbery and felony harassment.

At a pretrial conference on the date for the suppression hearing and possibly the disposition hearing, the court and counsel discussed whether the hearings might be conducted simultaneously, since both would be argued or tried to the bench. Only the prosecutor expressed reservations. After hearing from the parties, the trial court ruled that rather than hear the same testimony twice, it would combine the hearings. The lawyers proceeded directly to opening statements and completed the combined hearing in three days.

During the State's case, it called as witnesses Ms. Rodriguez; Mr. Zeller; Officers Gillette, Huizar, Garza; and Officer Chad Thorn. When examining Mr. Zeller, the State asked him if there was anyone in the courtroom that he remembered from the night of the robbery. The questioning and Mr. Zeller's answers drew objections from the defense and

5

statements on the record by the court and counsel as to whether Mr. Zeller even looked at the defendants in providing his answers.

Following the close of the State's evidence, the court heard argument of the defense motions to suppress. After hearing from counsel, the trial court ruled that while the out of court identifications were unnecessarily suggestive, there was no substantial likelihood of irreparable misidentification that supported suppressing the evidence. Turning to the defendants' related argument that the showup procedure tainted Mr. Zeller's in-court identification of the defendants, the court announced that as far as it was concerned, there "*was* no in-Court identification"—Mr. Zeller merely identified the defendants as responsible "because they're sitting in . . . Court." RP at 363-64 (emphasis added).

At the conclusion of the disposition hearing, the court found the defendants guilty of second degree robbery but not guilty of the felony harassment charges. It imposed a standard range sentence of 15 to 36 weeks of confinement on both. Both appeal.

ANALYSIS

Mr. Miranda Candido's first-filed brief makes three assignments of error. He first contends that in combining the suppression and disposition hearings, the trial court ruled on the suppression issue before permitting the defense to present evidence. Second, he contends that the court erred by being inconsistent in its treatment of Mr. Zeller's answers to the prosecutor's questions about whether he could identify anyone in the

6

courtroom as a person who robbed him. Third, he assigns error to the trial court's refusal to suppress evidence of the out of court identification of the defendants.[4]

Mr. Gray emphasizes the trial court's asserted error in refusing to suppress evidence of the out of court identification, but also adopts and incorporates Mr. Miranda Candido's other assignments of error.

We address the asserted errors in the order presented by Mr. Miranda Candido.

### I.  *Denial of right to present evidence*

Mr. Miranda Candido argues that by hearing argument and ruling on the suppression motion at the end of the State's case, the trial court "did not offer the defen[dant] an opportunity to present evidence" despite knowing he bore the burden of establishing an inadmissible eyewitness identification. Br. of Appellant Miranda Candido at 6. The State responds that the most reasonable inference from the record is that the defendants had no further evidence to offer and because no objection was made in the trial court, we should refuse to consider this argument.

We agree with the State. At the pretrial conference at which the court agreed to combine the suppression and disposition hearings, only the prosecutor expressed reservations—specifically, a concern that because the State bore the burden of proving guilt while the defendants bore the burden of establishing a basis for suppression, the

---

[4] His fourth assignment of error—that consideration of the identification evidence was not harmless—is an issue, not an assignment of error.

presentation and consideration of evidence could be "confusing." RP at 6. It was Mr.

Gray's lawyer who then proposed to proceed in a combined hearing in which the State

would take the lead, the defense would cross, and "leeway" would be given to the

defense when needed to present evidence in support of suppression. RP at 7. Mr. Gray's

lawyer expressed "no doubt" that the trial court could keep accurate notes and "track of

things." *Id.*

Mr. Miranda Candido's lawyer favored "whatever is the most efficient and

quickest way forward," identifying demands on his schedule that could interfere if

proceedings took more than a couple of days. RP at 8-9. He, too, expressed "complete

faith in the Court to be able to distinguish between . . . the suppression issues and the

things that are supposed to be just for trial." RP at 9.

After the prosecutor replied, allowing that she could "see where [defense

counsel's] coming from" and understood the "[efficiency][5] that we will all want to strive

for," the trial court said it would hear both matters at the same time. RP at 9-10.

Mr. Miranda Candido does not identify any time during presentation of the State's

case that defense counsel's attempt to cross-examine a witness about matters relevant to

suppression was shut down because it was beyond the scope of the State's direct

---

[5] The transcript says "sufficiency" but earlier discussion of "efficiency" leads us to conclude that the prosecutor either misspoke or the statement was mistranscribed; the trial court would reasonably have understood her to be referring to efficiency.

examination. Neither defense lawyer objected when, following the closing of the State's case, the trial court said it would hear argument on the motion to suppress. Neither defense lawyer requested the opportunity to call or recall any witness. Mr. Miranda Candido does not attempt to argue that manifest constitutional error occurred.

If there was error, it was not preserved. RAP 2.5(a). We will not review it.

*II.  Consideration of in-court identification*

Mr. Miranda Candido next argues that the trial court gave inconsistent treatment to Mr. Zeller's answers when asked by the prosecutor if he recognized anyone in the courtroom as a person who robbed him. He argues that the trial court found the answers were *not* an in-court identification as a reason to deny the motion to suppress, but then found the answers *were* an in-court identification in support of its ultimate finding of guilt.

In explaining why it would deny the defendants' suppression motions, the trial court made the following statements about Mr. Zeller's answers:

> [Q]uite frankly, Cody Zeller didn't identify these two gentlemen in Court during the trial. He said the only reason—I mean I acknowledge what [defense counsel] was arguing when [the prosecutor] was asking him, he said, "Yeah, that those are the two that mugged me," but [he] immediately, you know, concedes on, on cross examination that he identifies them as the responsible party (sic) because they're sitting in, in Court. . . . [I]t kind of undercuts that somehow the out of Court identification has influenced the in-Court identification because there was no in-Court identification.

9

RP at 363-64. In conclusions of law entered in support of its suppression ruling, the court included a conclusion that "Cody Zeller did not identify either respondent in Court at trial." Clerk's Papers (CP) (Miranda Candido) at 121; CP (Gray) at 83.

Following the disposition hearing, the trial court entered 71 detailed findings in support of its verdict in Mr. Miranda Candido's case, essentially summarizing all of the relevant evidence presented. Two of its findings address Mr. Zeller's answers to the prosecutor's identification questions. Mr. Miranda Candido only identifies the first, but the second is critical and reveals that the trial court consistently discounted Mr. Zeller's so-called in-court identification:

> 1.52 At trial [Mr.] Zeller was asked if he had seen the two men who had robbed him since the February 7, 2016. He said no. Then [Mr.] Zeller gestured to the [Mr. Gray and Mr. Miranda Candido], and asked "Those two gentlemen? No." When the prosecutor tried to clarify who [Mr.] Zeller was referring to when he stated "those two gentlemen," [Mr.] Zeller responded, "The two people who mugged me?" He then identified [Mr.] Gray and [Mr.] Miranda-Candido as the two young men who had robbed him on February 7, 2016. He was unable to identify which one took the money and had the gun initially and which one attempted to take his wallet.

> 1.53 On cross-examination, [Mr.] Zeller admitted that he only identified the two respondents because they were in the courtroom at the trial. And because they each had "black hair."

CP (Miranda Candido) at 105. Identical findings were made in support of the verdict in Mr. Gray's case. CP (Gray) at 65 (Findings of Fact 1.53 and 1.54).

10

We find no inconsistency in the trial court's treatment of Mr. Zeller's answers. The trial court consistently found that when testifying as a witness at trial, Mr. Zeller did not identify Messrs. Miranda Candido and Gray as the men who robbed him. He identified them, in court, only as the defendants at his trial.

### III. *Refusal to suppress showup identification*

Finally, Mr. Miranda Candido and Mr. Gray contend the trial court erred in denying their motions to suppress the COBAN recording of Mr. Zeller's identification of the three suspects. An out of court identification violates due process if the police procedure is "'so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Perry v. New Hampshire*, 565 U.S. 228, 238, 132 S. Ct. 716, 181 L. Ed. 2d 694 (2012) (alteration in original)[6] (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)); *State v. Vickers*, 148 Wn.2d 91, 118, 59 P.3d 58 (2002) (quoting *State v. Linares*, 98 Wn. App. 397, 401, 989 P.2d 591 (1999)). The due process inquiry involves two steps: determining if the identification was unnecessarily suggestive, and if it was, determining whether the

---

[6] The United States Supreme Court, or at least Justice Ginsburg, has shown a preference for "unnecessarily suggestive" rather than "impermissibly suggestive" in recent decisions such as *Perry*. We, too, believe that "unnecessarily" better explains the due process concern than does the circular "impermissibly." As pointed out in Justice Sotomayor's dissent in *Perry*, the United States Supreme Court has used "unnecessarily," "impermissibly" and "unduly" interchangeably in describing when suggestiveness raises a due process concern. 565 U.S. at 254 n.3 (Sotomayor, J., dissenting).

11

suggestiveness created a substantial likelihood of irreparable misidentification. *State v. Ramires*, 109 Wn. App. 749, 761, 37 P.3d 343 (2002).

In ruling on the suppression motions, the trial court found the procedure unduly suggestive for several reasons. The first was that before all three suspects were detained, Officer Garza sought to reassure a badly-shaken Mr. Zeller by telling him that other officers had set up a perimeter a few blocks away and were chasing some people. Additionally, Mr. Zeller overheard radio traffic about suspects being captured and the suspects, who were handcuffed, were presented by being pulled out of patrol cars, illuminated by a spotlight. Mr. Miranda Candido and Mr. Gray challenge only the trial court's finding that the suggestiveness did not create a substantial likelihood of irreparable misidentification.[7]

We review a trial court's denial of a motion to suppress by determining whether substantial evidence supports its factual findings and, if so, whether the findings support its conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Unchallenged findings are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

At issue is whether the findings support the trial court's conclusion that the identifications were sufficiently reliable to be admitted for consideration by the trier of

---

[7] The State argues that we can affirm on the basis that the trial court erred when it found the procedure unnecessarily suggestive. We need not reach that issue.

fact despite the suggestive procedure used. *Neil v. Biggers*, 409 U.S. 188, 198-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). In making this determination, the effect of the suggestive identification is weighed against factors indicating reliability, which include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *State v. Birch*, 151 Wn. App. 504, 514, 213 P.3d 63 (2009). *See also Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

Mr. Miranda Candido does not assign error to any of the trial court's findings of fact entered in support of its suppression ruling, but argues they do not support its conclusions. He emphasizes findings that Mr. Zeller "observed his alleged assailants in the dark while his attention was focused on a gun, and was unable to provide any description of any features other than the alleged assailants' hairstyles." Br. of Appellant Miranda Candido at 2. Mr. Gray assigns error to three of the trial court's findings in support of its suppression ruling. We need consider only finding 1.31, since the other two findings he challenges are not relevant to the reliability issue. Since Mr. Gray assigned error to finding 1.31 but then failed to address it any further in his brief, we deem the error assigned to that finding as abandoned. *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 488, 585 P.2d 71 (1978).

Considering finding 1.31 and all of the unchallenged findings as verities, we review whether they support the trial court's conclusion that there was no basis to suppress the out of court identification. Among the court's findings in support of its suppression ruling were the following:

1.3     When Magdalena Rodriguez was reunited with Cody Zeller, her boyfriend, she gave the details he gave her to 911 operator. . . . Zeller . . . told Rodriguez that the individuals who robbed him were wearing black clothing, had black hair and were in their late teens to early/mid twenties. This description can be heard being relayed on the 911 call.

. . . .

1.5     . . . the description was updated and, based upon that updated description, Officer Gillette began searching the area for a group of males and females wearing all black.

. . . .

1.28    Officer Garza's instructions to Cody Zeller were thorough. He spent time with Cody Zeller prior to the [showup], telling Zeller he wanted a yes or no, that he just wanted the truth and "not what you think I may want to hear," and clarified that the person "I show you may or may not be the one." Officer Garza allowed Rodriguez to stay in the back of the patrol car with Zeller for the [showup] but advised her that she was not to talk during the [showup] or attempt to influence the [showup] in any way.

1.29    Cody Zeller had an opportunity to view both Deshawn Gray and Miranda-Candido at the time of the crime. The gun was held 3-5 inches away from his person. The respondents were in close proximity to him. However, the robbery took place on a dark corner, there were no porch lights or street lights on to illuminate the area. The only light source came from passing cars. The respondents were wearing dark clothing. Zeller did provide a consistent description that both of the individuals who robbed him had dark hair and were wearing dark clothing, but could not describe features.

14

1.30 Throughout the robbery, Zeller had a gun pointed at him so his primary focus was the gun. Despite being focused on the gun, Zeller does remember that one of the males who robbed him had long dark hair, the other male had dark curly hair and both males were wearing dark clothing.

1.31 Cody Zeller's description of the suspects' appearance is consistent with the appearance of Gray and Miranda-Candido. The Court reviewed Officer Garza's COBAN, State's exhibit 4. The accuracy can be found in the nature of the dark clothing and the nature of the dark hair of the respondents, and the fact that Zeller described one respondent has [sic] having dark curly hair which fits Gray and one with long dark hair which fits Miranda-Candido.

1.32 Cody Zeller was presented with an opportunity to identify all three detained suspects approximately 40 minutes after the 911 call came in according to the COBAN time stamps from Officer Garza's patrol car, State's exhibit 4.

1.32.1 When Zeller viewed the first suspect, Deshawn Gray, at 9:20 PM, he stated, "Looks like him, not sure. Yeah, not sure for sure. Don't know. I remember the curly hair." Zeller testified that he did not recognize Deshawn Gray and that he was "iffy" about his identification of Deshawn Gray.

1.32.2 At 9:22 PM, Zeller viewed the second person, [J.L]. He told Officer Garza, "Yes, yeah, yes" indicating that she was one of the individuals he saw when he was being robbed. Officer Garza asked Zeller what she was doing during the robbery. Zeller responded by telling the officer that she was just sitting back there. He testified on the stand that she was standing off to the side while the situation was happening. But Zeller was very clear that he had seen her during the robbery and he knew what her role, or lack thereof, was in the robbery.

1.32.3 Zeller is shown a third suspect, Jose Miranda-Candido, also at COBAN timestamp 9:22 PM. As soon as Zeller saw Miranda-Candido, Zeller stated, "Yeah, yeah, that's him," and then he physically slumped over and broke down. At 9:26 PM, Zeller and Rodriguez were alone in the patrol car together. On the COBAN, Rodriguez told Zeller, "He knew it was him because he looked away." After further questioning regarding whether Miranda-

15

> Candido was the person who had the gun in his possession last, Zeller tells Rodriguez, "I hope it's him. He's familiar. I hope it's him." Zeller testified on the stand that the third person he was asked to identify was a male and that Zeller knew right away that the third male was involved because when the spotlight was shone on him, the male looked away and that was a sign to Zeller that he was one of the males who had robbed him.
>
> . . . .
>
> 1.33 In establishing the timeframe between the crime being committed and the [showup] being conducted, the Court reviewed Officer Garza's COBAN, State's exhibit 4, along with Officer Gillette's testimony regarding the CAD log that dispatch generated. The 911 call was answered by Magdalena Rodriguez at 8:36 PM. Officer Garza pulled into the Hy's Market parking lot at 8:46 PM. Deshawn Gray and [J.L.] were detained at 8:49 PM. Jose Miranda-Candido was detained at 9:12 PM. Officer Garza's COBAN showed that he pulled up for the [showup] at 9:20 PM. The [showup] was finished around 9:26 PM.

CP (Gray) at 74, 78-81. Identical findings were made in Mr. Miranda Candido's case.

CP (Miranda Candido) at 112, 116-119.

The trial court concluded that Officer Garza's instructions to Mr. Zeller mitigated some of its concerns about the suggestive nature of the showup identification. And as it explained in its oral ruling on the suppression motions, it considered the standard for excluding the evidence to be high, because even if not suppressed, the evidence "proceeds forward to the trier of fact to weigh out in the trial itself." RP at 356-57. In other words, credibility and reliability determinations remained to be made; the trial court's task in ruling on the suppression motion was only to assess the substantiality of the likelihood of "irreparable" misidentification.

16

The trial court forthrightly entered findings of the indicators that weighed against Mr. Zeller's ability to make an accurate identification as well as those that weighed in favor. Overall, the findings that we treat as verities are sufficient to support the trial court's conclusion that indicators of Mr. Zeller's ability to make an accurate identification were not "'outweighed by the corrupting effect' of law enforcement suggestion." *Perry*, 565 U.S. at 239 (quoting *Brathwaite*, 432 U.S. at 114). The evidence was properly admitted to be weighed by the court as the trier of fact. *See id.*

### Appellate costs

Mr. Gray asks us to waive costs on appeal should he not substantially prevail. We accept the State's representation that it will not seek an award of appellate costs.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____                _____
Fearing, C.J.                                   Lawrence-Berrey, J.

17