# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57664-3-II |
| Respondent, | |
| v. | |
| RYAN CHRISTOPHER FANCHER, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Ryan C. Fancher appeals his convictions for assault in the second degree and retail theft in the third degree with special circumstances, contending that the witness's pretrial identification of him was impermissibly suggestive and not otherwise reliable. Fancher further alleges he was denied effective assistance of counsel. We affirm Fancher's convictions.

## FACTS

Julian Brim was a customer at a home improvement store when he observed a man run out the front door, pushing a shopping cart full of unpaid merchandise. He followed the man into the parking lot and grabbed his cart Brim asked to see a receipt. The man told Brim to "f\*\*\* off" and then pulled out a knife. Rep. of Proc. (RP) at 107. Brim was close enough to be able to describe the knife as "retractable, composite handle, inexpensive." RP at 107. He was just a couple of feet away. The man made a stabbing motion toward Brim. Brim was afraid of being stabbed, so he retreated to the store to call the police. The encounter lasted approximately 30 seconds.

Brim described the man to police as disheveled and unkempt, wearing a long-sleeved gray shirt, gray baggy pants, and a Seattle Seahawks COVID face mask. Longview Police Officer Scott

McDaniel[1] responded to the scene and began looking for the suspect. He observed a man matching the suspect's description coming out of some trees near some railroad tracks. He was wearing a Seahawks mask when McDaniel initially saw him but the suspect dropped the mask on the railroad tracks.

Back at the store, Brim got in the back of a police vehicle and drove to McDaniel's location. Brim identified Fancher as the man from the store. As they drove away, Brim noticed merchandise scattered under a tree.

The State charged Fancher with assault in the second degree and retail theft with special circumstances[2] in the third degree. Our record does not show a pretrial motion to exclude Brim's show-up identification of Fancher.

During trial, the State presented a surveillance video showing a man leaving the store with a shopping cart of unpaid merchandise wearing a mask. Brim testified that the video was a true representation of what happened on the day in question and that the Seahawks mask was distinctive because there was no mask mandate at the time. He clarified that the mask stood out because, while many individuals still wore medical masks, the man at the store was wearing a cloth logo mask.

Brim further testified that when he was in the back of the police vehicle, Brim first recognized Fancher as the man from the store when he was 50 feet away. When they got eight feet away, Brim noticed the man was wearing the same clothes minus the Seahawks mask. Brim told the officer that the man was the same individual he encountered back at the store. When asked

---

[1] McDaniel retired prior to trial.

[2] Under RCW 9A.56.360(1)(b), the special circumstance in this case was that Fancher "at the time of the theft, [was] in possession of an item, article, implement, or device used, under circumstances evincing an intent to use or employ, or designed to overcome security systems."

if he was certain, Brim testified, "Very certain." RP at 111. There was no objection to this testimony.

The identification occurred approximately 30 minutes after the incident. Brim testified that as they drove away he noticed merchandise under a tree. The merchandise was approximately 30 feet from where he identified Fancher.

Longview Police Officer Jordan Sanders also testified for the State. He testified that he responded to the incident report at the store and picked up Brim to take him to view the suspect. Sanders testified that his identification procedure was to first ask the witness if he or she was willing to identify the suspect, explain that they "may or may not" see the suspect, and then stress that they are only viewing someone who may be involved in the crime. RP at 131. Sanders testified that as they pulled up, Fancher was standing near other police officers and in handcuffs. Brim then identified Fancher as the person he encountered in the store parking lot. Sanders testified that the identification occurred less than 30 minutes from the time of the incident. There was no objection to this testimony.

The jury found Fancher guilty as charged. He appeals.

ANALYSIS

I. OUT-OF-COURT IDENTIFICATION

For the first time on appeal, Fancher argues that Brim's show-up identification of him was obtained through an impermissibly suggestive procedure that was not reliable under the totality of the circumstances. We hold this issue has not been preserved for appeal.

We may review an issue raised for the first time on appeal if it suggests a manifest error affecting a constitutional right. RAP 2.5(a)(3). A party demonstrates manifest constitutional error by showing that the issue affects their constitutional rights and that they suffered actual prejudice.

3

*State v. J.W.M.*, 1 Wn.3d 58, 91, 524 P.3d 596 (2023). To demonstrate actual prejudice, the defendant must make a plausible showing that the claimed error had practical and identifiable consequences in the trial. *Id.*

A.     Constitutional Right

The due process clause of the Fourteenth Amendment to the United States Constitution requires the exclusion of identifications that were "obtained by an unnecessarily suggestive police procedure" and that lack "reliability under the totality of circumstances." *State v. Derri*, 199 Wn.2d 658, 673, 511 P.3d 1267 (2022). Because Fancher raises an issue that implicates a constitutional right, we evaluate the merits to determine whether there was a manifest error affecting the constitutional right.

B.     Manifest Error

Fancher must first establish that the identification procedure was "unnecessarily suggestive" to establish a manifest error affecting a constitutional right. *Id.* at 673. Brim's identified Fancher during a show-up identification. A "[s]how-up identification is typical shortly after a crime occurs when police show a suspect to a witness or victim." *State v. Birch*, 151 Wn. App. 504, 513, 213 P.3d 63 (2009). Show-up identifications are "not per se impermissibly suggestive," rather, the defendant must demonstrate "that the procedure was unnecessarily suggestive." *State v. Guzman-Cuellar*, 47 Wn. App. 326, 335, 734 P.2d 966 (1987). To meet due process requirements, an out-of-court identification must not be "so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification." *State v. Vickers*, 148 Wn.2d 91, 118, 59 P.3d 58 (2002). If the defendant fails to make this showing, the inquiry ends. *Derri*, 199 Wn.2d at 674.

In *Guzman-Cuellar,* police located a shooting suspect and escorted him back to the tavern where the shooting took place for a show-up identification. 47 Wn. App. at 333. This took place "less than 1 hour" after the shooting. *Id.* Witnesses at the tavern identified Guzman-Cuellar as the shooter. *Id.* at 329. At the time, he was handcuffed and standing approximately 15 feet from a police car. *Id.* at 336. A jury later found Guzman-Cuellar guilty of murder in the first degree. *Id.* at 330. On appeal, Division One of this court affirmed, holding that the show-up identification was not impermissibly suggestive. *Id.* at 336.

Here, McDaniel responded to the scene and began looking for the suspect. He observed a man matching the suspect's description coming out of some trees. Back at the store, Sanders picked up Brim and drove him to McDaniel's location. Sanders testified that he explained that they "may or may not" see the suspect, and stressed that they were only viewing someone who may be involved in the crime. RP at 131. Brim testified that from 50 feet away he knew it was the man from the parking lot. Fancher was standing next to police officers and handcuffed (it is unclear from our record if Brim noticed the handcuffs when he first identified him). The identification occurred approximately 30 minutes after the incident. Here, like in *Guzman-Cueller*, the show-up identification was held shortly after the crimes were committed and in the course of a prompt search for the suspect. We conclude that based on our facts, the identification was not impermissibly suggestive. Our inquiry ends here. *Derri*, 199 Wn.2d at 674.

Fancher fails to establish a manifest constitutional error. Accordingly, this issue is not preserved for review.

II.    INEFFECTIVE ASSISTANCE OF COUNSEL

Fancher next argues that he was denied effective assistance of counsel for defense counsel's failure to move to suppress the show-up identification. We disagree.

Ineffective assistance of counsel claims arise from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Id.* at 247-48.

Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* Prejudice exists if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have differed. *Id.* at 248. We apply a strong presumption that defense counsel's performance was reasonable. *Id.* at 247. Where the defendant's ineffective assistance claim is based on trial counsel's failure to challenge the admissibility of evidence, the defendant must show the absence of a legitimate strategic or tactical reason for not objecting, the likelihood that the objection would have been sustained, and a different outcome at trial had the evidence not been admitted. *Id.* at 248-49.

We can conceive of a legitimate reason for counsel choosing not to object to the show-up identification. Counsel could have concluded, as we do, that there appears little likelihood such an objection would have been successful. Moreover, Fancher's ineffective assistance of counsel claim fails because he cannot show that the outcome of the trial court would have been any different.

Here, Brim was only a couple of feet away from Fancher when the confrontation occurred and was able to describe Fancher to police including details about his clothes and the Seahawks mask he was wearing. McDaniel responded to the scene and observed Fancher coming out of some trees near some railroad tracks. He was wearing a Seahawks mask when McDaniel initially saw him but he dropped the mask on the railroad tracks. Brim testified that as they drove away he

noticed merchandise under a tree. The stolen merchandise was approximately 30 feet from where he identified Fancher.

Based on the above, Fancher fails to show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have differed. Therefore, Fancher cannot show he was prejudiced by counsel's performance. Without this showing, Fancher fails to show he received ineffective assistance of counsel.

## CONCLUSION

Fancher failed to preserve for review his challenge to the show-up identification. And he fails to show he was denied effective assistance of counsel for counsel's decision not to object to the identification. For these reasons, we affirm Fancher's convictions for assault in the second degree and retail theft in the third degree with special circumstances.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Maxa, P.J.

_____
Che, J.

7