[No. 11626–6–I.  Division One.  November 28, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS PHILLIP SMITH, *Appellant.*

*Elizabeth K. Selleck* of *Washington Appellate Defender Association,* for appellant.

*Seth Dawson, Prosecuting Attorney,* and *Larry E. McKeeman* and *David Kurtz, Deputies,* for respondent.

RINGOLD, J.—Thomas Phillip Smith appeals the judgment and sentence imposed upon a jury verdict finding him guilty of first degree murder. The primary issues presented concern the propriety of an identification proceeding held after the trial had commenced. Smith also assigns error to the court's refusal to give the jury a cautionary instruction relative to his alleged confession. We find no error and affirm.

The victim, Darwin Ward, was last seen alive by his mother on the morning of August 30, 1981. His body was found 2 weeks later in a heavily wooded area near Granite Falls. The coroner concluded he had been killed by a gun-

shot wound to the chest, but was unable to determine the caliber of the weapon.

The State theorized that Smith and his friend, Kevin Presby, killed Darwin around midday on August 30 because they were angry with him for attempting to date their girl friends. The victim spent the previous afternoon at a bar in Lake Stevens with his older brother, Leuron, Leuron's ex–wife, Jane, and Smith's girl friend, Linda. They left around 7 p.m. to go to a friend's house, but Darwin and Linda went instead to a tavern in Everett. They were later joined by Leuron, Jane, and Smith. Jane and Linda testified that Leuron and Darwin argued, but denied that Smith appeared jealous or angry with Darwin.

Jane stated that Leuron, Presby and Smith left her house around 10:30 the next morning to see Darwin. Leuron returned an hour later; Smith and Presby returned about an hour after that. Smith told her he had talked to Darwin and "everything was all right." Soon afterward, Smith and Presby went to the house where Jane's daughter, Tami, and another witness, Michelle, were staying. Tami testified that Smith gave her two shell casings. Later, Presby told her she was "holding their lives in her hands and that if anything happened, we would all go down." Michelle testified that Presby gave her some clothes to wash, telling her "to wash them twice to get the blood out." Both Tami and Michelle stated that Presby and Smith then washed Presby's car, possibly including the trunk. Michelle's cousin testified, without objection, that Michelle once said she was present when Smith shot Darwin.

The State also presented evidence that Smith, Linda and Michelle left Washington soon after the victim's body was discovered. They were found in Rawlins, Wyoming, where Michelle and Smith were arrested. Police found a blood-stained holster belonging to Smith in the Rawlins house. Chemical analysis revealed that the blood was type O, the same as that of the victim.

Before court convened on the fifth day of trial, the prosecutor brought the victim's younger brother, Kerry Ward,

*into* the *courtroom* and asked him if he could identify the old, bald man he had seen arguing with his brother the night before he disappeared. Kerry pointed to the defendant, who was sitting alone at counsel table, and stated "that's him." Smith's counsel was not present in the courtroom when the identification took place. When the trial resumed, Kerry testified that he saw the defendant arguing with his brother in the parking lot of an Everett tavern on the night of August 29.

Smith testified in his own behalf and denied any involvement in the killing. The jury found him guilty of first degree murder, and he appeals. Smith's principal contentions on appeal are that the midtrial identification procedure violated his rights to counsel and to due process of law. The State contends that the alleged error in admitting Kerry Ward's testimony is not subject to appellate review because Smith did not object to the testimony at trial.

### PROPRIETY OF APPELLATE REVIEW

■ Defense counsel initially objected to allowing Kerry Ward to testify, both on the grounds that the State had failed to list him as a witness and because of the allegedly improper identification procedure. The court granted counsel a recess to talk with the witness. After talking to Kerry, defense counsel raised no further objection to the testimony. Counsel fully argued the issues of denial of counsel and due process for the first time at the hearing on Smith's motion for new trial. Even if the issue had not been raised below, it is well established that constitutional claims may be raised for the first time on appeal. *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983); RAP 2.5(a). This court may properly consider whether the midtrial identification procedure violated Smith's rights to counsel and to due process of law.

### DID THE IDENTIFICATION PROCEDURE VIOLATE SMITH'S SIXTH AMENDMENT RIGHT TO COUNSEL?

Once adversarial criminal proceedings are commenced against an accused—whether by way of formal charge, pre-

liminary hearing, indictment, information, or arraignment—there is a constitutional right to have counsel present at any corporeal identification confrontation. *See United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967) (lineup); *Kirby v. Illinois,* 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972) (showup); *Moore v. Illinois,* 434 U.S. 220, 54 L. Ed. 2d 424, 98 S. Ct. 458 (1977) (identification procedure conducted in the course of a judicial proceeding). The identification proceeding is a "critical stage" of the prosecution because there is a possibility that it will prejudice the accused in defending the case. *Garrison v. Rhay,* 75 Wn.2d 98, 102, 449 P.2d 92 (1968). The presence of counsel is necessary because of the dangers inherent in such identification procedures.

> Persons who conduct the identification procedure may suggest, intentionally or unintentionally, that they expect the witness to identify the accused. Such a suggestion, coming from a police officer or prosecutor, can lead a witness to make a mistaken identification. The witness then will be predisposed to adhere to this identification in subsequent testimony at trial . . . If an accused's counsel is present at the . . . identification, he can serve both his client's and the prosecution's interests by objecting to suggestive features of a procedure before they influence a witness' identification.

*Moore v. Illinois, supra* at 224–25.

In the case sub judice, adversary judicial criminal proceedings had been initiated against Smith before the identification took place. Hence, under *Wade, Kirby* and *Moore,* Smith was constitutionally entitled to the presence of counsel at that confrontation. The fact that Smith's counsel questioned the witness about the procedure shortly after it took place does nothing to alleviate the violation which had already occurred. Any suggestiveness which may have influenced the witness' identification had already taken place. Since counsel was not present, he was unable to accurately determine the extent of the suggestiveness. Instead, defense counsel, both at trial and on appeal, has been forced "to probe in the dark in an attempt to discover

and reveal [the extent of] unfairness . . .". *Wade,* at 240–41. The identification procedure, conducted in the absence of counsel, violated Smith's Sixth Amendment rights. *Wade; Moore.*

■ It does not follow, however, that Ward's testimony must be suppressed. Since the State did not seek to admit evidence of the prior identification, Ward's identification from the witness chair is admissible if the State can establish by clear and convincing evidence that it had an origin independent of the improper identification procedure. *Wade,* at 240; *State v. Redmond,* 75 Wn.2d 62, 64, 448 P.2d 938 (1968). Relevant factors to be considered in determining whether the testimony had an independent origin include the witness' prior opportunity to observe the suspect, the existence of any discrepancy between any preconfrontation description and the defendant's actual description, any prior identification of another person, any prior identification of the defendant by photograph, failure to identify the defendant on a prior occasion, the lapse of time between the alleged act and the identification, and whether the witness previously knew the defendant. *Wade,* at 241.

The trial court did not make a finding as to whether Ward's testimony had an independent origin. The absence of such a finding would normally require a remand for determination of the question by the trial court. *See Wade,* at 242. The trial court did find, however, that the identification procedure was not impermissibly suggestive. This finding necessarily implies that the witness' testimony was based on his observation of the alleged argument, *i.e.,* that the testimony had an independent origin. Accordingly, we turn now to whether the identification procedure was impermissibly suggestive.

IDENTIFICATION PROCEDURE IMPERMISSIBLY SUGGESTIVE?

The question next presented is whether the challenged identification procedure was so impermissibly suggestive that it created a substantial likelihood of irreparable misi-

dentification, thus tainting Ward's subsequent in–court identification. *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). The reliability of the identification testimony is the linchpin to determining its admissibility. *Manson v. Brathwaite,* 432 U.S. 98, 114, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977). Each case must be decided on its own facts, considering the totality of the circumstances. *Neil v. Biggers,* 409 U.S. 188, 199, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972). Relevant factors to be considered are

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*State v. Abernathy,* 31 Wn. App. 635, 637, 644 P.2d 691 (1982), quoting *Neil v. Biggers, supra* at 199. The court must then weigh these factors against the possible corrupting effect of the suggestive identification itself. *Abernathy.*

The above factors are individually considered, in relation to the facts of this case:

1. The opportunity to view. Kerry Ward was waiting for his brother in the tavern parking lot when he saw him come out arguing with another man. There is no evidence in the record as to the length of time he observed the two men, his distance from them, or the available lighting.

2. The degree of attention. Ward probably paid close attention because his only purpose for being in the parking lot was to wait for his brother.

3. The accuracy of the description. Soon after the victim's body was discovered, Kerry Ward reported to police he had seen his brother arguing with an old, bald man wearing white clothing. Ward, who was 20 at the time of trial, testified that he said the man was old because "he looked between his 40's to me." Ward also testified that the man he saw with his brother was clean shaven. At the time of trial, the defendant was in his early thirties, bald and

clean shaven. Several of the State's witnesses testified that Smith had a chest–length beard at the time of the alleged argument.

4. The witness' level of certainty. Ward's identification was prompt and positive. He stated "You bet your ass I'm sure, that's the man, I would never forget his face."[1]

5. The time between the crime and the confrontation. The identification was made 6½ months after the crime was committed.

The witness viewed the suspect at night from an undetermined distance, but Kerry's attention level was high and he expressed certainty about his later identification. The witness was apparently mentally retarded to some degree, and the evidence was in conflict whether the man was bearded. Kerry's prior description of the man, however, was substantially similar to the defendant's actual appearance. The lapse of 6½ months between the observation and the confrontation was not an excessive length of time.

The final determination of reliability is a factual question best resolved by the trial court. The trial court, having observed the witnesses and having heard them testify, is in a better position to evaluate the extent of the retardation and powers of observation that Kerry demonstrated. The court also noted that Smith was not "an ordinary looking person . . . He is not somebody that would easily get lost in a crowd." Where, as here, the trial court weighed the conflicting evidence before it and where there is substantial supporting evidence, *State v. Hall*, 13 Wn. App. 620, 622, 536 P.2d 680 (1975), the trial court's finding will not be disturbed on appeal. *Redmond*, at 66. The record contains substantial evidence to support the trial court's finding that Kerry Ward's testimony was not tainted by the challenged identification procedure. The testimony was therefore properly admitted.

---

[1] This information comes from an affidavit of the prosecuting attorney, apparently filed in response to Smith's motion for new trial.

## DID THE COURT ERR IN REFUSING TO INSTRUCT THE JURY IN ACCORDANCE WITH WPIC 6.41?[2]

Smith's Wyoming cellmate, Dale Hartley, testified that he overheard the defendant admit to another prisoner that he shot the victim for going out with his girl friend. Smith's request for a cautionary instruction regarding this testimony was refused by the trial court.

Smith assigns error to this ruling, contending that a cautionary instruction as to the weight and credibility of a defendant's confession must be given upon request whether the admission is made to a civilian witness or to a law enforcement official.

■ The instruction requested by Smith is part of the confession procedure mandated by *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1 A.L.R.3d 1205 (1964), and complemented in Washington by CrR 3.5. This procedure requires that the voluntariness of an accused's custodial statement be determined by the court outside the jury's presence before it is admitted into evidence. The accused may reargue the issue of voluntariness to the jury if the court rules against him. The defendant is entitled upon request to a cautionary instruction like WPIC 6.41 if the voluntariness issue is raised at trial. This procedure must be followed only when the challenged statement is made to law enforcement officials; it is inapposite to statements made to private persons. *State v. McFarland,* 15 Wn. App. 220, 222, 548 P.2d 569 (1976). Since Smith allegedly made the statement to a private person, the CrR 3.5 procedure does not apply. The instruction requested by Smith need be given only when the accused challenges the voluntariness of his statement. CrR 3.5(d)(4). Smith did not allege his statement was involuntary, but maintained that Hartley's version of it was incorrect.

---

[2]WPIC 6.41 reads:

"You may give such weight and credibility to any alleged confession or admission of the defendant as you see fit, taking into consideration the surrounding circumstances."

■ Jury instructions are sufficient if they correctly state the law, are not misleading, and permit each party to argue its theory of the case. *State v. Mark,* 94 Wn.2d 520, 526, 618 P.2d 73 (1980). The trial court instructed the jury that:

> You are the sole judges of the credibility of the witnesses and of what weight is to be given the testimony of each. In considering the testimony of any witness, you may take into account the opportunity and ability of the witness to observe, the witness' memory and manner while testifying, any interest, bias or prejudice the witness may have, the reasonableness of the testimony of the witness considered in light of all the evidence, and any other factors that bear on believability and weight.

This instruction correctly informed the jury of its role in determining the credibility of each witness. It enabled defense counsel to argue that Hartley's testimony should be disregarded because it was prompted by his desire to curry favor with prosecuting authorities. Nothing more is required. *Mark.* The trial court did not err in refusing Smith's proposed instruction.

### SMITH'S PRO SE BRIEF

Smith filed a pro se supplemental brief in which he raises two additional assignments of error. First, he argues that the warrant under which he was arrested was defective for lack of probable cause. The record certified to this court does not contain any information relevant to the issuance of the arrest warrant. We therefore cannot consider the alleged error. *State v. Mannhalt,* 33 Wn. App. 696, 704, 658 P.2d 15 (1983). Smith next argues that there is insufficient evidence to support the conviction. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of first degree murder beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

The judgment and sentence is affirmed.

DURHAM, A.C.J., and CORBETT, J., concur.

Review denied by Supreme Court February 3, 1984.