# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49116-8-II |
| Respondent, | |
| v. | |
| CHRISTOPHER NICHOLAS JACKIN, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Christopher Nicholas Jackin appeals his conviction for indecent liberties. He argues that he received ineffective assistance of counsel, that the prosecutor committed misconduct, and that the trial court erred. Jackin also argues cumulative error denied him a right to a fair trial.[1] We affirm Jackin's conviction.

## FACTS

### I. INCIDENT

On July 10, 2015, Jackin, his girlfriend, Acacia Kirkland, and their four children drove from their home in Spokane to J.M.'s[2] home in Battle Ground. Kirkland and J.M. are sisters. J.M. and her fiancée, Daniel Nelson, were going to watch the four children while Jackin and Kirkland vacationed.

---

[1] Jackin also asks us to waive appellate costs. Pursuant to RAP 14.2, we will defer to the commissioner if the State files a cost bill and Jackin objects.

[2] We refer to the victim by her initials to protect her privacy.

The two families gathered for a barbecue at J.M.'s house. J.M. and Nelson both testified that all the adults consumed alcohol and marijuana. Kirkland and Jackin both denied consuming any marijuana, and Jackin also denied consuming any alcohol. Jackin testified that J.M. and Nelson were both "drinking pretty heavily." 3 Report of Proceedings (RP) at 302.

That night, Jackin and Kirkland slept on a couch in the living room. J.M. stayed up with her son and fell asleep later. She slept in a rocking chair in the same room as Jackin and Kirkland, still wearing the shorts she had worn that day.

J.M. testified that, later that night, Jackin awakened her with his hand inside her shorts. He had reached under her shorts and underwear and rubbed her vagina. J.M. asked him what he was doing, and Jackin apologized and said he "was just wanting to get a piece." 2 RP at 196.

J.M. woke Kirkland, who still slept on the couch. She told Kirkland what had happened and Kirkland began crying. J.M. then woke Nelson, who was asleep in his and J.M.'s bedroom. J.M. and Nelson returned to the living room and confronted Jackin. Jackin repeatedly apologized to J.M. and to Kirkland but accused J.M. and Nelson of not understanding his and Kirkland's relationship. Jackin ultimately left the house and spent the remainder of the night in his van.

Jackin offered a different version of events. He testified that he awoke late at night when J.M.'s son fell asleep on his feet. He then went to the kitchen for a glass of water. When he returned to the living room, J.M., who had been asleep in a chair, woke up and asked Jackin what he was doing. Jackin asked her if she was going to move her son. J.M. did not respond to Jackin's question, and instead woke Kirkland and told her that Jackin had his hand on her vagina. J.M. then began screaming at Jackin and Kirkland and calling Jackin vulgar names.

The following morning, J.M. drove Jackin and Kirkland to the airport for their vacation. They did not discuss the incident. At some point while Jackin and Kirkland were on vacation, J.M. called the police to report Jackin.

On July 14, Clark County Deputies responded to J.M.'s home when she returned from the airport with Jackin and Kirkland. They placed Jackin under arrest and a deputy interviewed Kirkland.

## II. CRIMINAL PROCEEDINGS

The State charged Jackin with one count of indecent liberties.[3]

### A. ADDITIONAL TRIAL TESTIMONY

Kirkland testified as follows. J.M. woke her because Jackin had touched her vagina. J.M. was upset and was yelling. Ultimately, Kirkland asked Jackin to go sleep in the van because she was uncomfortable with the situation.

Kirkland and Jackin did not discuss the incident while on vacation. She wanted to enjoy the vacation and figured there would be time to discuss it when they returned home.

The State asked Kirkland about what she had told the deputies and Jackin objected on hearsay grounds. The State argued that it was trying to introduce Kirkland's prior inconsistent statement, and the trial court overruled the objection. The State then asked Kirkland whether she recalled telling a deputy that, while on vacation, Jackin told her that he had touched J.M. She said she had no recollection of this statement and denied making it. She said that Jackin consistently denied touching J.M. Kirkland stopped talking to the deputy because "he was telling [her] what [she] was saying rather than listening to the words [she] was trying to tell him." 4 RP at 443.

---

[3] RCW 9A.44.100(1)(b).

3

Deputy Jeremy Brown testified that Kirkland told him that Jackin touched J.M. When the State asked further questions about what Kirkland said, Jackin objected on hearsay grounds. The State argued that it was a prior inconsistent statement and that it was offered only to impeach Kirkland. Jackin conceded that it was permissible for that limited purpose and withdrew his objection. Brown then testified that Kirkland told him that Jackin had told Kirkland that he had touched J.M.

B. JURY INSTRUCTIONS

Jackin requested pattern instruction 6.41, which states: "You may give such weight and credibility to any alleged out-of-court statements of the defendant as you see fit, taking into consideration the surrounding circumstances." Clerk's Papers (CP) at 44; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.41, at 196 (3d ed. 2008) (WPIC 6.41). He wanted the instruction to limit the jury's consideration of J.M.'s testimony about what Jackin had said immediately after the assault.

The State argued that the instruction was only intended to be given "when there is a custodial statement that the defense is disputing having been made voluntarily" and is not intended for the purpose of limiting other kinds of statements by the defendant. 3 RP at 251. The court ruled that the instruction was unnecessary and decided not to give it. The court acknowledged it had discretion in instructing the jury and stated:

> I do think the general credibility language within WPIC 1.02 that we are going to be providing to the court [sic], which is the same language that was identified here in the Smith case, provides more than adequate opportunity for the defense to be able to argue what the[y] want to about whether or not the statement was accurate, whether or not in this particular case the alleged victim's representation of the statement is accurate or not, to what extent she is credible on giving that information, and be able to argue those issues to the jury.

3 RP at 255.

4

C.     CLOSING ARGUMENTS

During closing arguments, the State made the following statement at the end of its rebuttal argument:

> She didn't really want to go to the police, but she did.  And she came to court and she took the stand and she told you under oath the reality of what happened to her, the reality of what he did in the night while she was vulnerable when he violated her in that way.
>      And maybe he had plans to do something worse, we don't know, but what he did was bad enough.  And because of that, when you consider the evidence in this case, I would ask you to find him guilty of indecent liberties and return that verdict.

3 RP at 378-79.

D.     VERDICT AND PRESENTENCE INVESTIGATION REPORT

The jury found Jackin guilty of indecent liberties.  After the jury had returned its verdict of guilty, but before sentencing, the Washington Department of Corrections (DOC) prepared a presentence investigation report (PSI).  In its description of the facts, the PSI stated:

> [JM] stated that at about 0130 hours on 07/11/15, she awakened and felt someone touching her genital area.  She opened her eyes to see [Jackin] standing beside her, with his hand down her pants.  He was rubbing her vaginal area with his fingers.  [JM] said she reacted both verbally and physically to make him stop, and he withdrew his hand.  [JM] said when she asked [Jackin] what he thought he was doing, he answered, "I was just trying to get some."

CP at 93.  The PSI stated that its information came "from official reports regarding this incident."

CP at 93.

Jackin appeals.

5

ANALYSIS

I.    INEFFECTIVE ASSISTANCE OF COUNSEL

    A.    LEGAL PRINCIPLES

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. Representation is deficient if, after considering all the circumstances, the performance falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the results of the proceeding would have differed. *Grier*, 171 Wn.2d at 34. If either prong is not satisfied, the ineffective assistance of counsel claim fails. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

There is a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

"Conversely, a criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Strategic decisions must be reasonable. *Grier*, 171 Wn.2d at 34.

B.    LESSER INCLUDED OFFENSE JURY INSTRUCTION

Jackin contends that he received ineffective assistance of counsel because his trial attorney did not propose a jury instruction on assault in the fourth degree as a lesser included offense. He claims that it was objectively unreasonable for his attorney to pursue an "all or nothing" strategy by foregoing the instruction. Br. of Appellant at 10.

A court should give a lesser included offense instruction when both "the lesser included offense consists solely of elements that are necessary to conviction of the greater, charged offense" and "the evidence presented in the case supports an inference that *only* the lesser offense was committed, to the exclusion of the greater, charged offense." *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015). For the second prong of the test to be met, "the evidence must affirmatively establish the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt." *State v. Fernandez-Medina*, 141 Wn.2d 448, 456, 6 P.3d 1150 (2000). "It would be error to give an instruction not supported by the evidence." *State v. Berlin*, 133 Wn.2d 541, 546, 947 P.2d 700 (1997).

A defendant is guilty of indecent liberties if "he or she knowingly causes another person to have sexual contact with him or her or another: . . . [w]hen the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless." RCW 9A.44.100(1)(b). A defendant is guilty of assault in the fourth degree if he commits an assault "not amounting to assault in the first, second, or third-degree." RCW 9A.36.041(1). "Assault," for purposes of this case, is "unlawful touching with criminal intent." *State v. Bluford*, 195 Wn. App. 570, 584, 379 P.3d 163 (2016) (quoting *State v. Stevens*, 158 Wn.2d 304, 310-11, 143 P.3d 817 (2006)), *rev'd on other grounds by* 188 Wn.2d 298, 393 P.3d 1219 (2017). Therefore, to find

Jackin guilty of assault but not indecent liberties, the jury would have had to find that Jackin touched J.M. unlawfully with criminal intent, but did not have sexual contact with her.

The jury heard no evidence that Jackin touched J.M. for any reason except to have sexual contact with her. Rather, Jackin testified that he had not touched J.M. at all and she had fabricated the story entirely. Because there was no evidentiary basis to grant the jury instruction, Jackin's trial attorney was not ineffective for failing to request it.

C. PRIOR INCONSISTENT STATEMENTS

Jackin contends that his trial counsel was ineffective for withdrawing his objection to Brown's testimony about Kirkland's prior inconsistent statements. He claims that the State offered testimony that impeached her only on the "collateral issue" of whether Jackin "touched" J.M. and that, therefore, his trial counsel was ineffective for withdrawing his objection.

Generally, "a witness's prior out-of-court inconsistent statement may be admissible for impeachment, to allow the trier of fact to compare 'something the witness said out of court with a statement the witness made on the stand' in order to ascertain the witness's credibility." *State v. Classen*, 143 Wn. App. 45, 59, 176 P.3d 582 (2008) (internal citation omitted) (quoting *State v. Spencer*, 111 Wn. App. 401, 409, 45 P.3d 209 (2002)). The State is "allowed to impeach its own witness using a prior inconsistent statement." *State v. Clinkenbeard*, 130 Wn. App. 552, 570, 123 P.3d 872 (2005). However, "[a] witness cannot be impeached on an issue collateral to the issues being tried." *State v. Fankhouser*, 133 Wn. App. 689, 693, 138 P.3d 140 (2006).

An issue is collateral "if it is not admissible independently of the impeachment purpose." *Fankhouser*, 133 Wn. App. at 693. Evidence pertains to a collateral matter if it lacks direct relevance to the issues being tried and serves only to contradict a witness. *State v. Descoteaux*, 94

Wn.2d 31, 37-38, 614 P.2d 179 (1980) *overruled on other grounds by State v. Danforth*, 97 Wn.2d 255, 257 n.1, 643 P.2d 882 (1982).

In this case, Jackin's testimony was that he never touched J.M. at all but that she had entirely fabricated that he had touched her. As Jackin acknowledges in his brief, whether he touched J.M. "went to the heart of" his defense. Supp. Br. of Appellant at 15. It was not a collateral issue whether Jackin touched J.M. because it was a relevant issue in the case independently of its contradiction with Kirkland's testimony.

Jackin must show that his trial counsel's decision to withdraw his objection was not a "legitimate trial strategy or tactic." *State v. Kolesnik*, 146 Wn. App. 790, 801, 192 P.3d 937 (2008). Further, the "decision whether to object is a classic example of trial tactics, and only in egregious circumstances will the failure to object constitute ineffective assistance of counsel." *Kolesnik*, 146 Wn. App. at 801. Here, Jackin's attorney's withdrawal of his objection to the State's impeachment of Kirkland was not deficient.

Jackin must also show that his attorney's withdrawal of his objection prejudiced his case. He argues that a failure to object to this testimony was prejudicial because it "went to the heart of the defendant's claim that he did not have any sexual contact—or contact of any degree—with J.M." Supp. Br. of Appellant at 15. However, Jackin's argument that this error prejudiced him is inconsistent with his contention that whether he "touched" J.M. is a collateral matter. Because whether Jackin touched J.M. was a critical issue in the case, the trial court would have overruled any objection from Jackin's attorney and the withdrawal of the objection did not prejudice Jackin's case. Consequently, Jackin's argument fails.

D.     FAILURE TO IMPEACH

Jackin contends that his trial counsel was ineffective for failing to impeach J.M. with prior inconsistent statements from the PSI's description of the incident.  He argues that the PSI's statement that J.M. "physically reacted" to Jackin touching her is inconsistent with her testimony that she "merely woke up and 'scolded' him after asking what he was doing."  Supp. Br. of Appellant at 17.  He claims that his attorney's failure to cross-examine J.M. with this inconsistency constitutes ineffective assistance of counsel.

Jackin has not cited to any prior inconsistent statements by J.M. anywhere in the record, except in the PSI which did not exist at the time of trial.  He claims that the PSI cites "official reports regarding the incident" and presumes that this statement indicates a police report to which Jackin's trial counsel would have had access.  Supp. Br. of Appellant at 16.  However, Jackin fails to cite to any inconsistent statement in our record that Jackin's attorney would have had at trial.  Because his argument relies on information outside the record, we do not consider it.  *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

II.     PROSECUTORIAL MISCONDUCT

Jackin contends that the prosecutor committed misconduct in his closing arguments by speculating about what Jackin could have done, rather than focusing on the actual facts in evidence. He claims that the prosecutor's improper comments were so flagrant and ill-intentioned that they warrant reversal, despite his trial attorney's failure to object.

"Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial."  *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012).  An appellant claiming prosecutorial misconduct must demonstrate that the prosecutor's conduct was both improper and prejudicial.  *State v. Emery*, 174 Wn.2d 741, 759-61, 278 P.3d 653 (2012).

Where the defendant fails to object to the improper comments at trial, he or she must show that the comments were "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. We focus "less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.

"We review a prosecutor's purportedly improper remarks in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the instructions to the jury." *State v. Pierce*, 169 Wn. App. 533, 552, 280 P.3d 1158 (2012). "Although prosecuting attorneys have wide latitude to argue facts and reasonable inferences from the evidence, they are not permitted to make prejudicial statements unsupported by the record." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 557, 397 P.3d 90 (2017) (internal citation omitted).

In *Lui*, the prosecutor speculated about whether the defendant had sexually assaulted the victim in addition to strangling her. 188 Wn.2d at 557. In that case, the defendant had strangled the victim and DNA testing had produced evidence of the defendant's semen on the victim's body. *Lui*, 188 Wn.2d at 557. Though there were no sexual assault charges in the case, the prosecutor made the following statement in his closing argument: "Did he try to have sex with her, before he was strangling her, at the same time he was strangling [her], after he strangled her. We don't know." *Lui*, 188 Wn.2d at 558. The court concluded that the inference of sexual assault "was supported by trial testimony and within the wide latitude given to attorneys during closing arguments." *Lui*, 188 Wn.2d at 558.

In this case, the prosecutor argued to the jury "maybe [Jackin] had plans to do something worse, we don't know, but what he did was bad enough. And because of that, when you consider the evidence in this case, I would ask you to find him guilty of indecent liberties and return that

11

verdict." 3 RP at 378-79. Like the argument in *Lui*, the argument here was within the prosecutor's "wide latitude to argue facts and reasonable inferences from the evidence." *Lui*, 188 Wn.2d at 557. There was no prosecutorial misconduct.

III.     ALLEGED TRIAL COURT ERRORS

Jackin argues that the trial court erred by permitting Brown to testify about the statements Kirkland had made to Brown as prior inconsistent statements to impeach Kirkland's testimony. He claims that the State called Kirkland as a witness for the primary purpose of setting up her impeachment through Brown's testimony. He contends that the State used impeachment evidence of Kirkland as substantive evidence to convict him.

"It is well settled that objections raised on appeal to the admission of evidence will not be considered unless based upon the same ground asserted at trial." *State v. Hayes*, 37 Wn. App. 786, 790, 683 P.2d 237 (1984).

At trial, Jackin first objected to Brown's testimony about Kirkland's statements as hearsay. Then, when the State declared it only intended the evidence to impeach Kirkland as a prior inconsistent statement, Jackin's attorney stated: "for that limited purpose, Your Honor, sorry, I concede that there's probably not firmer ground" and the court deemed the objection withdrawn. 4 RP at 458. Because Jackin withdrew his objection to the impeachment evidence at trial and did not argue that Kirkland was called primarily for the purpose of impeachment, the court was not given an opportunity to rule on the issue. Therefore, the hearsay arguments are not preserved, and we do not consider them.

A.       JURY INSTRUCTIONS

Jackin contends that the trial court erred by refusing to give pattern jury instruction WPIC 6.41, which states: "You may give such weight and credibility to any alleged out-of-court statements of the defendant as you see fit, taking into consideration the surrounding circumstances." Supp. Br. of Appellant at 19 (quoting WPIC 6.41). Though this instruction is ordinarily used when the defendant makes a statement to law enforcement and contests the voluntariness of the statement, Jackin argues that it may also be used when the defendant denies making a confession introduced as an out-of-court statement by the prosecution.[4] He claims that he was severely prejudiced by the court's refusal to give the instruction.

We review a trial court's decision whether to give a particular jury instruction for abuse of discretion. *State v. Cuthbert*, 154 Wn. App. 318, 341, 225 P.3d 407 (2010). A trial court abuses its discretion "if it based its ruling on an erroneous view of the law." *Clark County v. McManus*, 185 Wn.2d 466, 471, 372 P.3d 764 (2016).

*State v. Smith* established that the court should give WPIC 6.41 "if the voluntariness issue [of a confession] is raised at trial." 36 Wn. App. 133, 141, 672 P.2d 759 (1983). *Smith* also stated explicitly that "[t]his procedure must be followed only when the challenged statement is made to law enforcement officials; it is inapposite to statements made to private persons." 36 Wn. App. at 141.

---

[4] At trial, Jackin proposed this instruction with regard to his out-of-court statements to J.M. when she woke up.  . On appeal, he shifts to an argument that the instruction should have been provided for his out-of-court statements to Kirkland that he had touched J.M. that were admitted purely for the purpose of impeaching Kirkland. Neither party raises this discrepancy.

Jackin contends that *State v. Hubbard* stands for the proposition that the instruction should also be given where the defendant contests ever making a confession, in addition to when he contests the confession's voluntariness. 37 Wn. App. 137, 679 P.2d 391 (1984), *rev'd on other grounds by* 103 Wn.2d 570, 693 P.2d 718 (1985). In *Hubbard*, however, the defendant made the confession at issue to his parole officer, not to a "private person." 37 Wn. App. at 144-45.

Jackin argued to the trial court that, while the instruction only "need be given" relating to statements made to law enforcement officials, per *Smith*, "it doesn't say 'can only be given,' . . . or 'must be given.' So I think there is still some discretion." 3 RP at 254. The trial court then acknowledged its discretion in giving the instruction and declined to give it. It stated the defense was still free to argue about the accuracy of the statement and its credibility. Jackin has not shown that the trial court abused its discretion by declining to give this instruction as it is only required "when the challenged statement is made to law enforcement officials." *Smith*, 36 Wn. App. at 141.

IV.     CUMULATIVE ERROR

Jackin argues that each of the above errors taken together created a "cumulative and enduring prejudice" that affected the jury's verdict and denied him a fair trial. Supp. Br. of Appellant at 23.

Where a trial contains multiple errors, "[c]umulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless." *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). However, this "doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial." *Weber*, 159 Wn.2d at 279.

Jackin has not demonstrated any errors that combined would amount to cumulative error requiring reversal. Accordingly, cumulative error did not deprive him of his right to a fair trial.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for the public record in accordance with RCW 2.06.40, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Lee, A.C.J.