**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

Respondent,

v.

LISA GRACE MILAM,

Appellant.

No. 87670-8-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — A jury convicted Lisa Milam of assault in the first degree, manslaughter in the first degree, assault in the fourth degree, and felony harassment. Milam appeals and argues that (1) the trial court made various instructional errors, (2) her defense counsel was ineffective, and (3) there was insufficient evidence to sustain the assault in the first degree and manslaughter convictions. Because the trial court failed to provide a self-defense instruction for the assault in the first degree charge, we reverse and vacate that conviction. We remand to the trial court to reinstate the previously vacated manslaughter in the first degree conviction and resentence Milam accordingly. We otherwise affirm.

I

Milam lived with her mother Lela Riley and her sister Lorraine Riley.[1] On July 26, 2022, Lela was in her bedroom when she heard Lorraine and Milam begin to get into a

---

[1] Because Lela and Lorraine have the same last name, we refer to them by their first names. We intend no disrespect.

fight in the kitchen. Lela testified that she first heard Lorraine tell Milam to use a roasting pan to cook dinner and then heard Milam respond "you f'n bitch." At this point, Lela left her room and saw Lorraine and Milam on the floor. She observed Milam pulling Lorraine's hair and hitting her in the chest.

Lela testified that she did not see who started the fight or who swung first. In a pretrial written statement, Lela said that she saw Milam knock Lorraine out of a chair. But, at trial, Lela testified that Lorraine and Milam were already on the floor when she came out of her room. She denied that she saw Milam knock Lorraine out of a chair.

Lela attempted to break up the fight, but Milam pushed Lela to the ground. Lela testified that Milam said "when I'm done killing this bitch you're next." Lela managed to get back to her bedroom to call 911. Lela heard Milam slam the front door and yell "you f'n cop caller." Lela then left her room and observed that Lorraine was on the floor and was not breathing.

When officers and paramedics arrived, Lorraine was lying face down on the ground, she was not breathing, and her face was bluish with brown liquid oozing from her mouth. Paramedics determined that Lorraine was in cardiac arrest and began cardiopulmonary resuscitation (CPR). Paramedics were eventually able to get her heart to restart and transported her to the hospital.

Caroline Harding was a homecare aid that worked at Lela's home for three years. She was there the day of the fight, but she left before the fight occurred. Harding testified that she observed that Milam was acting very angry and punching herself in the face. Harding testified that she told Lorraine to stay away from Milam because of her behavior.

-2-

Milam was arrested later that evening and read her Miranda[2] warning. After invoking her Miranda rights, Milam complained about injuries and pain, so officers transported her to the hospital. At one point, Milam asked if Lorraine would be in trouble for what she had done to her.

Lorraine died 10 days later on August 5, 2022. The autopsy report stated that the cause of death was "anoxic encephalopathy due to probable cardiac dysrhythmia during altercation. Hypertensive cardiovascular disease, chronic methamphetamine abuse, obesity, and hepatic steatosis are contributing conditions." The report stated that Lorraine had no injuries. The report summarized that "[b]ecause the relative extent to which methamphetamine intoxication and physical altercation contributing to her death cannot be assessed[,] the manner of death is best undetermined."

The State charged Milam with murder in the first degree, assault in the first degree, assault in the fourth degree, and felony harassment. The jury found Milam guilty of manslaughter in the first degree, assault in the first degree, assault in the fourth degree, and felony harassment. The jury found Milam not guilty of murder. The trial court vacated the manslaughter in the first degree conviction on double jeopardy grounds.

Milam appeals.

II

Milam asserts the trial court made various instructional errors. We address each argument in turn.

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

A

Milam argues that the trial court erred when it did not provide a self-defense instruction for the assault in the first degree charge. At oral argument, the State conceded error.[3] We accept the State's concession.

We review alleged instructional errors de novo. State v. Sibert, 168 Wn.2d 306, 311, 230 P.3d 142 (2010). "Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law." State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). A defendant is entitled to a jury instruction on self-defense when they produce "some evidence demonstrating self-defense." State v. Werner, 170 Wn.2d 333, 336-37, 241 P.3d 410 (2010). Once the defendant produces some evidence of self-defense, the burden shifts to the State to prove the absence of self-defense beyond a reasonable doubt. State v. Woods, 138 Wn. App. 191, 198, 156 P.3d 309 (2007). Lastly, "[u]nder the doctrine of invited error, even where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant has proposed an instruction or agreed to its wording." State v. Winings, 126 Wn. App. 75, 89, 107 P.3d 141 (2005).

Milam presented some evidence of self-defense, the jury was instructed on self-defense for murder and manslaughter charges, and the parties agreed on the self-defense instruction for the assault charge, although it was seemingly inadvertently not

---

[3] Wash Ct. of Appeals oral arg., State v. Milam, No. 87670-8-I (June 3, 2025), at 8 min., 51 sec., https:// www.tvw.org/watch/?clientID=9375922947&eventID=2025061lll&startStreamAt=968.

given to the jury.  We accept the State's concession that the assault conviction should be reversed.

B

Milam next argues that the trial court violated her right to present a defense by suggesting through jury instructions that she could only use self-defense if she feared death or great bodily injury.  We disagree.

The jury was given the following instructions on self-defense:

Instruction No. 38

It is a defense to the charge of murder and manslaughter that the homicide was excusable as defined in this instruction.

Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, without criminal negligence, or without any unlawful intent.

The State has the burden of proving the absence of excuse beyond a reasonable doubt.  If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

Instruction No. 39

A person is entitled to act on appearances in defending herself, if she believes in good faith and on reasonable grounds that she is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger.  Actual danger is not necessary for the use of force to be lawful for charges other than homicide.

Instruction No. 40

It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that she is being attacked to stand her ground and defend against such attack by the use of lawful force.

The law does not impose a duty to retreat. Notwithstanding the requirement that the lawful force be "not more than necessary," the law does not impose a duty to retreat. Retreat should not be considered by you as a "reasonably effective alternative."

Instruction No. 41

It is a defense to the charge of murder and manslaughter that the homicide was justifiable as defined in this instruction:

Homicide is justifiable when committed in the lawful defense of the slayer when:

(1) the slayer reasonably believed that the person slain intended to inflict death or great personal injury;
(2) the slayer reasonably believed that there was imminent danger of such harm being accomplished; and
(3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to her, at the time of the incident.

The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

Instruction No. 42

Great personal injury means an injury that the slayer reasonably believed, in the light of all the facts and circumstances known at the time, would produce severe pain and suffering, if it were inflicted upon either the slayer or another person.

Instruction No. 43

No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon kill another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense. Words alone are not adequate provocation for the defendant to be the aggressor.

Instruction No. 44

A person is entitled to act on appearances in defending herself, if that person believes in good faith and on reasonable grounds that she is in actual danger of great personal injury, although it afterwards might develop that the person was mistaken as to the extent of the danger.

Actual danger is not required for a homicide to be justifiable.

Because the jury was inadvertently not given the self-defense instruction to the assault charge, no instruction defined lawful force under RCW 9A.16.020(3). Therefore, the instructions did not explicitly provide that Milam could have acted in self-defense with nondeadly force because she feared she was about to be injured. This may have been relevant to the manslaughter charge if the jury found excusable homicide. See State v. Brightman, 155 Wn.2d 506 n.13, 122 P.3d 150 (2005) (noting that a defendant could be acting lawfully under RCW 9A.16.020(3) which resulted in an accidental killing).

But we conclude that any error was harmless. The jury was instructed on several theories of self-defense, including excusable homicide and justifiable homicide. Additionally, Milam's counsel argued in closing:

> Then, we move on to—and the sixth option that you have to have—you have to consider here is that this was just an unfortunate accident. These two had friction as sisters sometimes do. They get in an argument, they start hitting each other. And because Lorraine is in such poor health, it pushes her over a brink that no one would have expected. I'm not saying that Lorraine's life didn't count. Don't get me wrong there. She didn't deserve to die that night. But, even if—if she died in a situation where any other person would not have, that could have been an accident. It could have been just a scrap between the two of them that turned bad.

The defense's closing argument, coupled with the jury instructions, illustrate that Milam was still permitted to argue her theory of the case. Moreover, jury instruction 39

provided that "a person is entitled to act on appearances in defending herself, if she believes in good faith and on reasonable grounds that she is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger." This is based on WPIC 17.04. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.04 (5th ed. 2021) (WPIC). This instruction uses the language "injury" and reminds the jury that actual danger of an injury is not required. This instruction is sufficient to show the jury that lawful force could be fear of injury, rather than great bodily harm.

For those reasons, we conclude that none of the instructions warrant reversal.

III

Milam next argues that defense counsel was ineffective for failing to object to various jury instructions and testimony from Lela. We disagree.

A

A defendant has a constitutional right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A claim of ineffective assistance of counsel presents a mixed question of fact and law that is reviewed de novo. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). To prevail on a claim of ineffective assistance of counsel, a party must establish that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant's case. Strickland, 466 U.S. at 687. If a defendant fails to satisfy either prong, the inquiry ends. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

B

Milam argues that defense counsel was ineffective for failing to object to the first aggressor instruction. We conclude that counsel was deficient, but Milam was not prejudiced.

Generally, the right of self-defense cannot be successfully invoked by an initial aggressor who provokes an altercation. State v. Riley, 137 Wn.2d 904, 908, 976 P.2d 624 (1999). An aggressor instruction is appropriate when there is credible evidence that the jury could conclude that the defendant provoked the need for self-defense. Riley, 137 Wn.2d at 909-10. An aggressor instruction impacts a defendant's self-defense claim, so courts are urged to "use care in giving an aggressor instruction." State v. Grott, 195 Wn.2d 256, 266, 458 P.3d 750 (2020). Whether an aggressor instruction is appropriate is a highly fact-specific inquiry, and we "must carefully consider the specific evidence presented at trial in the light most favorable to the requesting party." Grott, 195 Wn.2d at 267. Further, if a defendant engaged in a single aggressive act and that act was the sole basis for the charged crime, a first aggressor instruction is not appropriate. Grott, 195 Wn.2d at 272.

Whether the State produced sufficient evidence to warrant a first aggressor instruction is a question of law that is reviewed de novo. State v. Anderson, 144 Wn. App. 85, 89, 180 P.3d 885 (2008). In making this determination, we view the evidence in the light most favorable to the party who proposed the instruction. State v. Wingate, 155 Wn.2d 817, 823 n.1, 122 P.3d 908 (2005).

Here, the trial court provided the following jury instruction:

> No person may by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon kill another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that the defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense. Words alone are not adequate provocation for the defendant to be the aggressor.

Milam did not object.

The State argues there was not a single aggressive act, but Milam was engaged in a course of aggressive conduct on the day Lorraine died and the assault was the final act. We disagree.

Even viewing the evidence most favorable to the State, the testimony that the State relies on is not enough to prove that Milam was engaged in an aggressive course of conduct that may have provoked Lorraine. The testimony from Harding that Milam was acting strange and angry is not a provoking act. There is no evidence of anything that Milam did that may have provoked "a belligerent response" by Lorraine. And because the provoking act cannot be the charged assault itself, the instruction was error.

Because the instruction was improper, we must address if Milam was prejudiced by the instruction. To establish prejudice under an ineffective assistance of counsel claim, Milam must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would be different. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Milam cannot demonstrate prejudice. The State did not mention the first aggressor instruction in closing arguments. Whether Milam may have provoked a

-10-

belligerent response from Lorraine was not a focal point of either party's case.  There is not a reasonably probability that the trial would have been different if the instruction had not been given.

C

Milam next argues her defense counsel was ineffective for failing to object to a jury instruction that improperly commented on the evidence.  We conclude that any possible error was harmless.

Article IV, section 16 of the Washington Constitution provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."  This constitutional provision prohibits a judge "from 'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'"  State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)).

We apply a two-step analysis to determine whether a judicial comment requires reversal of a conviction.  Levy, 156 Wn.2d at 723.  First, we examine the facts and circumstances of the case to determine whether a court's conduct or remark rises to a comment on the evidence.  State v. Sivins, 138 Wn. App. 52, 58, 155 P.3d 982 (2007).  If we conclude the court made an improper comment on the evidence, we presume the comment is prejudicial, "and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted."  Levy, 156 Wn.2d at 723.

Jury instruction 6 provided:

> You may give such weight and credibility to any alleged out-of-court statements of the defendant as you see fit, taking into consideration the surrounding circumstances.

This instruction is modeled off WPIC 6.41 and is typically given if the voluntariness of a confession is raised at trial. State v. Smith, 36 Wn. App. 133, 141, 672 P.2d 759 (1983).

Here, the instruction was not used because the voluntariness of a confession was at issue. Assuming without deciding that this instruction was improper, any error was harmless. There is a presumption that the jury follows the trial court's instructions. State v. Emery, 174 Wn.2d 741, 754, 278 P.3d 653 (2012). Accordingly, even when a trial court makes an improper comment, the error may be cured by a jury instruction to disregard any comments on the evidence. Hizey v. Carpenter, 119 Wn.2d 251, 271, 830 P.2d 646 (1992).

Here, jury instruction 1 directed the jury to disregard such comments:

> Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

Because we presume the jury follows the instructions of the trial court, any alleged error here would have been cured by the instruction.

D

Milam argues her counsel was ineffective for failing to move to strike testimony and object to testimony that provided evidence that Milam knew of her sister's heart condition.  We disagree.

Defense counsel twice successfully objected to Lela's testimony that Milam was aware of the Lorraine's health conditions, but defense counsel did not move to strike the testimony.  After those objections, Lela testified that Lorraine sat down and told her and Milam about what her doctors had said.  Milam did not object to this testimony.

Milam's counsel successfully objected to the first two statements.  It may have been a legitimate trial tactic to not strike those statements so that it did not draw more attention to them.  As for the third statement, the statement may not have been objectionable because it was not offered to prove the truth of the matter asserted and could have been used as effect on the listener rather than impermissible hearsay.  See State v. Edwards, 131 Wn. App. 611, 614, 128 P.3d 631 (2006) ("A statement is not hearsay if it is used only to show the effect on the listener, without regard to the truth of the statement.").

IV

Milam next argues that there was insufficient evidence to convict her of manslaughter in the first degree because there was no evidence that she knew her sister suffered from chronic obstructed pulmonary disease and had enlarged lungs, abused methamphetamine, and may have had acute methamphetamine intoxication at the time of death.  She argues even if she had some knowledge of the heart condition,

there was no proof she knew of a substantial risk that death could result from an "unarmed struggled that did not include fatal blows." We disagree.

Due process requires that the State prove every element of a crime beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). To determine whether sufficient evidence supports a conviction, we must "view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." State v. Homan, 181 Wn.2d 102, 105, 330 P.3d 182 (2014), abrogated on other grounds by State v. Roberts, 5 Wn.3d. 222, 232, 572 P.3d 1191 (2025). The State's evidence is admitted as true, and circumstantial evidence is considered equally reliable as direct evidence. State v. Scanlan, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). Lastly, we defer to the fact finder's resolution of conflicting testimony and their evaluation of the evidence's persuasiveness. Homan, 181 Wn.2d at 106.

For the charge of manslaughter in the first degree, the jury was instructed that "a person commits the crime of manslaughter when she recklessly causes the death of another person." The jury was further instructed that:

> A person is reckless or acts recklessly when she knows of and disregards a substantial risk that death may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.

> When recklessness as to a particular result or fact is required to establish an element of a crime, the element is also established if a person acts intentionally or knowingly as to that result or fact.

"Recklessness" contains both an objective and a subjective component. State v. Melland, 9 Wn. App. 2d 786, 804, 452 P.3d 562 (2019). To determine whether there is

sufficient evidence for recklessness, it depends on both "what the defendant knew and how a reasonable person would have acted knowing these facts." Melland, 9 Wn. App. at 804 (internal citations omitted) (quoting State v. Graham, 153 Wn.2d 400, 408, 103 P.3d 1238 (2005)).

Viewing the evidence most favorable to the State, a jury could have found that Milam knew of Lorraine's health condition based on Lela's testimony that she was there when Lorraine informed them of her condition. Alternatively, a rational jury could have concluded that it was reckless to punch the chest and pull the hair of a woman who had health issues due to weight and drug use. Therefore, there was sufficient evidence for the manslaughter conviction.[4]

Because the trial court failed to provide a self-defense instruction for the first degree assault charge, we reverse and vacate that conviction. We remand to the trial court to reinstate the previously vacated manslaughter conviction[5] and resentence Milam accordingly. We otherwise affirm.[6]

---

[4] Milam also argues that there was insufficient evidence for the assault in the first degree conviction. Because we reverse and vacate that conviction for the failure to provide the self-defense instruction, we need not address the sufficiency of the evidence argument.

[5] Under Washington law, a lesser conviction previously vacated on double jeopardy grounds may be reinstated if the defendant's conviction for a more serious offense based on the same act is subsequently overturned on appeal. State v. Turner, 169 Wn.2d 448, 466, 238 P.3d 461 (2010).

[6] Milam also argued that she was improperly restrained at her sentencing hearing and that there was a clerical error in her judgment and sentence. Because we remand for resentencing, we do not reach these issues. Additionally, Milam submits a statement of additional grounds but she presents no error reviewable by this court.

_____ Mann, J.

WE CONCUR:

_____, ACJ

_____ Smith, J.