IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78346-7-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| MICHAEL THOMAS LOU, | |
| Appellant. | FILED: February 10, 2020 |

CHUN, J. — Michael Lou appeals his convictions for first degree identity theft, forgery, first degree theft, second degree identity theft, and second degree theft. He claims that two in-court identifications were impermissibly suggestive and therefore violated his right to due process. He also contends that his trial counsel performed ineffectively by failing to renew a motion to sever, move for a mistrial, or request a limiting instruction after the court dismissed three counts at the close of the State's case. We determine that, because the identifications contained sufficient indicia of reliability, Lou's due process claim fails. Additionally, we reject Lou's ineffective assistance of counsel claim because he fails to show that his counsel's performance was deficient or that it prejudiced him. Accordingly, we affirm except to remand to strike the criminal filing and deoxyribonucleic acid (DNA) fees from the Judgment and Sentence.

## I. BACKGROUND

On August 5, 2016, Lynden police arrested Ronald McKinney for using a fake driver's license to complete a credit application. Following his arrest, McKinney told police the following: Lou made fake identifications (IDs) for him and he used the IDs to purchase items on credit. The IDs contained McKinney's photograph but another person's name and identifying information. McKinney and Lou sold the items online for two-thirds of their price. The two split the profit.

On June 1, 2017, the State filed an amended information charging Lou with 22 counts: leading organized crime (count 1), first degree identity theft (counts 2, 5, 11, 16, 21), forgery (counts 3, 7, 10, 12-15, 17, 19, 22), first degree theft (count 4), trafficking in stolen property (count 8), second degree identity theft (counts 9, 18), and second degree theft (counts 6, 20). Lou's attorney moved to sever the trial, which motion the court denied. The court found that Lou had "failed to demonstrate that [he] would be unduly prejudiced by having Counts 1-22 presented to a jury in a single trial." Lou again submitted a motion to sever, which the court denied.

Witness Jordan Giske testified at Lou's trial as follows: On July 16, 2016, while at work at a Washington Tractor store, Giske spent 20-25 minutes helping a customer purchase equipment. Because the customer applied for financing, Giske collected personal information. The customer identified himself as Michael Avis and provided a driver's license with that name. The customer was "approximately 5'8" or so, 180 to 185 pounds, fit or stocky build and [C]aucasian or Oriental." Giske stated that he was "100 percent sure" that Lou was the

customer he helped that day. Giske agreed with the defense that Lou was the only person in the courtroom who matched his description of the customer.

Giske additionally stated that he had seen Lou walking outside the courtroom. After Giske left the witness stand, the defense stated, because Lou was in custody, he must have been in handcuffs and escorted by officers when Giske saw him outside of the courtroom. The court agreed.

Josh Bair also testified for the State. Bair's testimony provided the following: While working at J & I Power Equipment on July 21, 2016, Bair spent between 30 minutes and an hour helping a customer with financing for some equipment. Bair recollects the interaction "exactly." As part of protocol, Bair copied the customer's driver's license. The customer signed the financing form as Michael Avis. When Bair later provided a statement for the police, he wrote that the customer was "a medium build Native American male." By Native American, Bair "meant [the customer] was darker complexion than [himself], some sort of Asian type descent." While in the courtroom, Bair identified Lou as the customer he had helped. Bair acknowledged that Lou looked different than the other people at the defense table. After a recess, Lou's defense counsel stated for the record that she saw Bair in the hallway before officers brought Lou into the courtroom and therefore believed that Bair had seen Lou in handcuffs prior to making his in-court identification.

After the witnesses testified, Lou moved to strike the in-court identifications. Lou argued that the identifications violated due process because the combination of (1) the witnesses seeing him in restraints and escorted, and

(2) him being the only person at the defense table matching the witnesses' descriptions, rendered the identification procedures unnecessarily suggestive. The court denied Lou's motion.

At the close of the State's case, the court dismissed count 1 (leading organized crime) due to insufficient evidence and counts 9 and 10 (second-degree identity theft and forgery) for lack of venue.

On February 26, 2018, the jury acquitted Lou of count 8 (trafficking in stolen property) but found him guilty on the remaining charges. Lou appeals.

## II. ANALYSIS

### A. In-Court Identifications

Lou argues that the two in-court identifications violated his federal right to due process because the witnesses saw him in handcuffs and escorted by officers outside of the courtroom prior to the identifications and because he was the only person matching the descriptions of the suspect at the defense table. Advancing several arguments, the State claims no due process violation occurred. We conclude that Lou's claim fails because the identifications bore sufficient indicia of reliability.

This issue involves the admission of evidence, which we review for abuse of discretion.[1] State v. Birch, 151 Wn. App. 504, 514, 213 P.3d 63 (2009).

---

[1] Though Lou did not address the standard of review in his briefing, at oral argument he contended that we should review this issue de novo. Wash. Court of Appeals oral argument, State v. Lou, No. 783467 (Jan. 16, 2020), at 1 min., 51 sec. though 2 min., 27 sec. (on file with court). But this would contradict the case law directly addressing this issue. See Birch, 151 Wn. App. at 514 (reviewing a due process challenge to an in-court identification for an abuse of discretion).

4

"A trial court abuses its discretion when it exercises its discretion in a manifestly unreasonable manner or bases its decision on untenable grounds or reasons." Birch, 151 Wn. App. at 514.

An out-of-court procedure violates due process if it is impermissibly suggestive such that it is substantially likely that irreparable misidentification will occur. State v. Vickers, 148 Wn.2d 91, 118, 59 P.3d 58 (2002). Courts use a two-part analysis to determine whether an identification violated due process. See Birch, 151 Wn. App. at 514. Under this analysis, the party challenging the identification first bears the burden of showing that the procedure was impermissibly suggestive. Vickers, 148 Wn.2d at 118. If the party makes this initial showing, the court then considers whether, based on the totality of the circumstances, the procedure "created a substantial likelihood of irreparable misidentification." Vickers, 148 Wn.2d at 118. In deciding this factor, courts consider whether, despite the suggestiveness, the identification contained sufficient indicia of reliability. State v. Ramires, 109 Wn. App. 749, 761, 37 P.3d 343 (2002). To this end, courts analyze:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.

Birch, 151 Wn. App. at 514.

Assuming, without deciding, that the identifications were impermissibly suggestive,[2] Lou's due process claim fails because the identifications contained sufficient indicia of reliability.

Here, Giske helped the man he identified as Lou with purchasing equipment for 20-25 minutes. As such, he had close contact with the customer for an extended period of time. Prior to his in-court identification, he described the person as "approximately 5'8" or so, 180 to 185 pounds, fit or stocky build and [C]aucasian or Oriental." And Lou's Judgment and Sentence describes him as 5'10" tall, 180 pounds in weight, and having black hair and brown eyes. Giske further testified that he was "100 percent sure" that Lou was the customer he helped that day.

Bair also spent an extended period of time at close contact with the man he identified as Lou in court. In total, he spent between 30 minutes and an hour helping with financing. Bair described the customer as "a medium build Native American male," though he later testified that "Native American" was how he described people with darker skin than his own. Bair testified that he could "recollect exactly" his interaction with the customer.

Though certain facts suggested that the witnesses could be mistaken in their identifications of Lou, the shortcomings of their identifications went to the weight of the evidence rather than its reliability. Birch, 151 Wn. App. at 515.

---

[2] For purposes of this opinion, we also assume, without deciding, that there was improper arrangement by law enforcement. See Perry v. New Hampshire, 565 U.S. 228, 242, 132 S. Ct. 716, 181 L. Ed. 2d 694 (2012) (holding that the Due Process Clause is implicated only when the identification is procured under unnecessarily suggestive circumstances arranged by law enforcement).

Because both in-court identifications of Lou contained sufficient indicia of reliability, we conclude the trial court did not abuse its discretion by admitting them.

B. Ineffective Assistance of Counsel

Lou asserts that his trial counsel performed ineffectively by failing to renew the motion to sever or move for a new trial after the court dismissed counts 1, 9, and 10, and by not requesting an instruction to limit the jury's consideration of the evidence relating to the dismissed counts. The State asserts that Lou cannot establish the elements of an ineffective assistance claim. We agree with the State.

For only counts 1, 9, and 10 the State presented evidence of three fraudulent transactions:

• A man and a woman entered a Washington Tractor store in Snohomish on July 1, 2016. The woman filled out a credit application to purchase two generators. The man appeared to be of "island descent," had brown hair, and was "[p]robably six-foot to six-foot two." The employee helped the woman load the generators into a baby blue hatchback-style vehicle.

• After impounding Lou's vehicle, detectives found paperwork issued by Issaquah Honda/Kubota containing the name Dana Marler.

• On June 8, 2016, an employee at a Washington Tractor store in Aberdeen helped a customer who "was about 5'10", 5'11" or so, white, you know, white complexion, dark brown hair, bit of facial hair" with a transaction to purchase equipment. The transaction turned out to be fraudulent. The employee could not identify anyone in a photo montage as the customer he had helped. At trial, the employee described the customer as of "possibly Asian descent or maybe white Asian, some kind of mix."[3]

---

[3] The State does not argue that this evidence related to any count other than 1, 9, and 10.

At the end of the State's case, the court dismissed counts 1, 9, and 10. Lou's attorney did not renew the motion to sever, move for a mistrial, or request a limiting instruction.

An ineffective assistance of counsel claim involves mixed questions of law and fact that we review de novo. State v. Linville, 191 Wn.2d 513, 518, 423 P.3d 842 (2018).

Washington imposes a two-pronged test for determining whether a defendant received constitutionally sufficient representation. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). Under this test, the defendant bears the burden of showing both deficient performance and resulting prejudice. Estes, 188 Wn.2d at 457-58. An attorney's performance is deficient "if it falls 'below an objective standard of reasonableness based on consideration of all the circumstances.'" Estes, 188 Wn.2d at 458 (citing State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). "[S]crutiny of counsel's performance is highly deferential and courts will indulge in a strong presumption of reasonableness." State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). To show prejudice, the defendant must demonstrate a reasonable probability that, had their counsel performed sufficiently, the outcome of the proceedings would have been different. Estes, 188 Wn.2d at 458. A reasonable probability "is a probability sufficient to undermine confidence in the outcome." Estes, 188 Wn.2d at 458 (citing Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984). Applying these standards, we conclude that Lou's ineffective assistance of counsel claim fails.

Lou first argues that his counsel should have renewed the motion to sever after the court dismissed counts 1, 9, and 10. But regarding the question of deficient performance, counsel need not pursue strategies that reasonably appear unlikely to succeed. State v. Brown, 159 Wn. App. 366, 371, 245 P.3d 776 (2011). Here, the court had twice before denied Lou's motion to sever. When the court first denied the motion, it found that Lou had failed to demonstrate that a single jury trial would result in undue prejudice. Given the court's previous denials of his motions to sever and its finding that a single trial would not cause undue prejudice, Lou's attorney could have reasonably believed that the court would have denied yet another motion to sever. As such, Lou's attorney did not perform deficiently by failing to renew the motion to sever.

Lou next claims he received ineffective assistance of counsel because his attorney did not move for a mistrial after the court dismissed counts 1, 9, and 10. But this claim also fails because Lou cannot show his attorney's failure to move for a mistrial constituted deficient performance. To obtain a mistrial, Lou would have had to show that nothing the court could have said or done would have remedied the harm to him. State v. Post, 118 Wn.2d 596, 620, 826 P.2d 172 (1992). Given this high bar, Lou's attorney again could have reasonably believed that the court would have denied a motion for a mistrial. See Brown, 159 Wn. App. at 371. Thus, Lou fails to satisfy the deficient performance prong as it relates to his counsel's failure to move for a mistrial.

Finally, Lou claims that his counsel was ineffective because she did not request a limiting instruction after the jury heard evidence related to three

9

uncharged fraudulent transactions. But Lou cannot show that this constituted deficient performance. Before the court instructed the jury, Lou's counsel was presumably aware that the court would provide a limiting instruction to evaluate each count separately. And indeed, the court did so: the instruction provided that "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." The court additionally instructed the jury to not consider charges 1, 9, and 10 for any reason. Jurors are presumed to follow the court's instructions. State v. Kalebaugh, 183 Wn.2d 578, 586, 355 P.3d 253 (2015). To be sure, an additional limiting instruction would have potentially emphasized the evidence related to the three uncharged transaction. Thus, we can presume that the decision not to request one was legitimate trial strategy. State v. Donald, 68 Wn. App. 543, 551, 844 P.2d 447 (finding that lawyer's failure to request limiting instruction was tactical). "Deficient performance is not shown by matters that go to trial strategy or tactics." State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). Additionally, as to prejudice, because the court gave these two instructions, Lou cannot show that the lack of a third limiting instruction prejudiced him.

In light of the foregoing, Lou's claims of ineffective assistance of counsel fail.

C. Legal Financial Obligations

Lou seeks to have the $200 filing fee and $100 DNA fee stricken from his judgment pursuant to State v. Ramirez, 191 Wn.2d 732, 739, 426 P.3d 714

10

(2018). <u>Ramirez</u>, decided after the trial court imposed the fees in this case, holds that trial courts may not impose discretionary costs on an indigent criminal defendant. 191 Wn.2d at 746. Here, the trial court recognized Lou's indigence when it allowed him to pursue his appeal at public expense. The $200 criminal filing fee is discretionary. <u>Ramirez</u>, 191 Wn.2d at 748. Additionally, the $100 DNA sampling fee is discretionary if the State has already collected an offender's DNA because of a prior conviction. RCW 43.43.7541. Lou's Judgment and Sentence recognized that he had prior convictions and that the State had already collected a DNA sample from him. The State properly concedes this issue.

Affirmed except to remand to strike criminal filing and DNA fees from the Judgment and Sentence.

_Chun, J._

WE CONCUR: